In re Hon. Paul E. CORNING,
Jr., Respondent.

No. 59450.

Supreme Court of Missouri, En Banc.

June 24, 1976.

As Modified on Courts Own Motion
July 12, 1976.

David O. Danis, Whalen, O'Connor & Danis, St. Louis, for Commission on Retirement.

Albert A. Michenfelder, Jr., Dudley C. Dunlop, Clayton, for respondent.

HOLMAN, Judge.

This case involves the question as to whether respondent should be removed from office as a St. Louis County Circuit Judge. Removal was unanimously recommended under S.Ct. Rule 12.08 by the Commission on Retirement, Removal and Discipline (hereinafter called Commission).

The Commission was authorized and created by a constitutional amendment which became effective January 1, 1972. Art. V, Sec. 27, Mo.Const. Since that date the Commission has made a number of recommendations to this court which have been disposed of by orders or brief per curiam opinions. This is the first case, however, in which it has been recommended that a circuit judge be removed from office.

In order to provide for the organization and procedure of the Commission this court adopted Rule 12. Rule 12.06 provides for the removal of a judge "because of permanent sickness or physical or mental infirmity." Rule 12.08 authorizes the Commission, after an appropriate hearing, to recommend that a judge "be removed from office, suspended from the performance of his duties for a period of time or otherwise disciplined" upon a finding, inter alia, that the judge "is guilty of misconduct, . . . willful neglect of duty, . . . incompetency."

Paul E. Corning, Jr. was admitted to the bar in 1953. In 1966, he was the Republican nominee and was elected to a circuit judgeship, assuming office in January, 1967. As will hereinafter more fully appear he immediately adopted a practice of holding cases under submission for an unreasonable length of time. In 1970 St. Louis County adopted the nonpartisan plan for selection of circuit judges. See Art. V, Sec. 29(a), (b). In the general election in 1972, respondent was retained in office for another term. It is of some significance, however,

that in a poll of St. Louis County lawyers a majority voted against his retention. Respondent testified that in another poll conducted by the Missouri Bar he was favored for retention.

On October 31, 1975, a notice was served on respondent by the Commission advising him that a hearing would be held beginning December 11, 1975, at which the Commission would investigate the following charges against him:

"I. Between January 1, 1973, and July 1, 1975, you violated Supreme Court Rules 2.02, 2.07 and 2.08 in the following respects:

"(a) You failed to administer judicial matters before you in a speedy and careful manner (Rule 2.02); you failed to exhibit industry and application commensurate with the judicial duties imposed upon you (Rule 2.06); you failed to be prompt in the performance of your duties, recognizing that the time of litigants, jurors and attorneys is of value and you habitually lacked punctuality (Rule 2.07); and you failed to organize the Court with a view to the prompt and convenient dispatch of its business and you failed to cooperate with other Judges of the Circuit Court to promote more satisfactory administration of justice (Rule 2.08).

"(b) You failed on numerous occasions to rule on motions, trials and other matters before your Court with reasonable dispatch after said matters were submitted to you for ruling, thereby causing inconvenience. Rules 2.02, 2.06 and 2.07.

"II. Between July 1, 1975, and October 1, 1975, you violated Sup.Ct.Rule 2 as amended effective July 1, 1975, Canon 3, in the following respects:

"You failed to promptly dispose of the business of your Court and were dilatory in deciding motions, trials and other matters before your Court.

"III. On or about July 5, 1975, Interrogatories were directed to you on behalf of the Commission on Retirement, Removal and Discipline, regarding listing of cases presently under submission by you and also

cases partially heard by you and not finally adjudicated, said interrogatories returnable July 25, 1975; thereafter at your request the returnable date was extended to August 11, 1975; thereafter you failed to answer or object to said Interrogatories or to respond in any manner, and said failure constitutes a violation of Sup.Ct.Rule 12.13.

"IV. Between January 1, 1973, and October 1, 1975, you violated the provisions of Mo.Const. Art. V, Sec. 29F, and Sup.Ct. Rule 2.28, and Sup.Ct. Rule 2, Canon 7, by your association and affiliation with the Normandy Township Republican Club." (Unless otherwise indicated citation to S.Ct. Rules are to those in effect prior to July 1, 1975).

■ It was appropriate for the Commission to undertake an investigation of the conduct of Judge Corning and where found to be appropriate to conduct a hearing. Rule 12.08(a) so contemplates. When the Commission has reason to believe that a judge, trial or appellate, has wilfully failed to perform his duties in a timely and proper manner it should conduct an investigation to determine whether such information is correct and whether for any reason some disciplinary action should be recommended to this court.

A hearing was held at the time stated and on February 25, 1976, the Commission made the following findings and conclusions:

### "FINDINGS OF FACT

"I. Respondent delayed ruling on several matters before him and over the period of time from January 1, 1973, through October 1, 1975, demonstrated a persistent pattern of delay which impaired the prompt determination of judicial matters, so as to impede a speedy determination of the rights of litigants before him which has created a backlog of cases pending before him, and the delays included the following:

"(a) In the case of *State vs. Rogers,* Cause 324174, the defendant was indicted by the Grand Jury on a charge of Murder in the First Degree, tried before a jury, which found defendant guilty of Manslaughter in March of 1972, and the jury assessed defendant's punishment at two to ten years in the Missouri Department of Corrections. Respondent accepted the verdict, and assessed the defendant's punishment at two years. Thereafter, post-trial motions were filed and heard. Sentencing was set for July 28, 1972, at 10:00 A.M. The next entry in the Court file dated August 11, 1972, indicates the sentencing was continued to September 22, 1972, at 10:00 A.M. On August 24, 1972, the case was removed from the docket of September 22, and set for October 11, 1972. No further entries appear in the file. The defendant has never been sentenced or granted probation, and the file was still pending in St. Louis County Circuit Court on the date of the hearing three years and nine months after the verdict.

"(b) Between January 1, 1973, and October 1, 1975, Respondent failed to promptly rule upon the merits of cases submitted to him including the cases of *Aach vs. Widmer,* Cause No. 335174, which was submitted on February 15, 1974, and not ruled upon until October 14, 1975; *Palmertree vs. State,* Cause No. 362846, submitted on December 19, 1974, and not ruled upon as of December 5, 1975; *Hoelzer vs. Beard,* Cause No. 337658, submitted on September 25, 1974, and not ruled on until 10–17–75; *Fleming vs. Fleming,* Cause No. 345783 submitted on October 1, 1973, and not ruled upon until September 23, 1974; *In Re Mary Hanebrink,* Cause No. 359696, submitted on 2–10–75 and not ruled upon as of December 5, 1975; *Woods vs. Western Life,* Cause No. 335953, submitted on 5–1–75 and not ruled upon until November 10, 1975; *Costello vs. Costello,* Cause No. 355658, submitted on 9–11–74, and not ruled upon until 2–10–75; *Cannon vs. Cannon,* Cause No. 334966, wherein the case was heard and submitted on January 3, 1973, and not ruled upon until June 14, 1973.

"(c) Between January 1, 1973, and October 1, 1975, Respondent failed to promptly rule on Motions to Dismiss and other motions submitted to him including the mo-

tions in the cases of: *Zurheide vs. London,* Cause No. 285415, (G20755), wherein objections to Request for Admissions were submitted on 2–21–75 and not ruled upon 12–8–75; *Bilgere vs. Bippen,* Cause No. 359467, wherein several motions were submitted on 3–14–75 and one of the motions was not ruled upon as of 12–11–75; *Scoggin vs. Scoggin,* Cause No. 350732, wherein a Motion to Dismiss was submitted on 4–23–75 and not ruled upon until 12–8–75; *Harlin vs. Somogyi,* Cause No. 365833, wherein a Motion to Quash was submitted on 5–23–75 and as of 12–3–75 no ruling had been entered; *Mastin vs. Parkway,* Cause No. 366407, wherein a Motion to Dismiss was submitted on 5–16–75 and not ruled upon as of 12–3–75; *Green vs. Rose,* Cause No. 356825, wherein a Motion to Dismiss was submitted on 5–19–75 and not ruled upon as of 12–3–75; *Crescent vs. Linclay,* Cause No. 362508, wherein a Motion to Dismiss was submitted on 7–1–75 and not ruled upon as of 12–3–75, and several other cases.

"(d) Between January 1, 1973, and October 1, 1975, Respondent failed to rule promptly on Motions for temporary alimony and child support in numerous cases, including the cases of: *Smith vs. Smith,* Cause No. 306295, submitted on 9–27–74 and not ruled upon until 7–31–75; *Smith vs. Smith,* Cause No. 314560, wherein the Motion was submitted on October 17, 1973, and not ruled upon until June 18, 1974; *Dogeny vs. Dogeny,* Cause No. 318051, wherein a Motion was submitted on 7–16–75 and not ruled upon as of 12–11–75; *Georgeff vs. Georgeff,* Cause No. 289065, wherein the Motion was submitted on 9–12–74 and not ruled upon until 2–18–75.

"II. Between January 1, 1973, and December 3, 1975, Respondent arrived at St. Louis County Circuit Court after the time designated by Respondent as the opening of court and the calling of the Docket, and as a result thereof, witnesses, parties, attorneys and jurors were delayed and in particular Respondent was late on: March 11, 1974, 3–21–74, 3–22–74, 3–29–74, 4–8–74 and 4–9–74, 4–10–74, April 24, 1974, 4–26–74, 4–29–74, 9–16–74, 10–10–74, 10–28–74, 10–29–74, April 22, 1975, and 12–3–75.

"Respondent was habitually late in arriving at the courthouse and at the opening of Court. Respondent concedes his habit of arriving late at Court but states that he arises early but has difficulty in arriving at Court on time. Respondent further states that he has difficulty in functioning until later in the day.

"III. The Commission on Retirement, Removal and Discipline in order to determine the number of cases and the status of the cases pending before the Respondent at the time of the investigation by the Commission served several Interrogatories upon Respondent to evaluate the status of his caseload and Docket on or about July 5, 1975. Thereafter, at the request of Respondent, Respondent was granted additional time until August 11, 1975, within which to file Answers to the Interrogatories. Respondent has failed to ever file Answers to the Interrogatories and has never informed the Commission of the number of cases or the status of cases that were pending during the investigation of this matter, and, therefore, the Commission has been unable to fully and completely determine the number and status of all the cases handled by Judge Corning during the period in question and pending before Judge Corning at the time of his hearing.

"IV. That for a number of years while a Circuit Judge under the Non-Partisan Court Plan, Respondent was an active member of the Normandy Township Republican Club and paid dues as an active member. Respondent regularly attended monthly dinner meetings of the Normandy Township Republican Club and requested Magistrate Lloyd Kelly to swear in the new officers at the installation meeting of the Normandy Township Republican Club in March, 1975. Respondent resigned as a member of said Club on June 30, 1975.

"V. The Commission fails to find that Respondent did not cooperate with other Judges of the Circuit Court.

"VI. That the Respondent had knowledge of the dilatoriness of his docket, cases,

and motions for a number of years. The Supreme Court of Missouri, en banc, issued an order to Respondent on November 13, 1970 wherein it pointed out that at that time Respondent has 'a large number of cases and proceedings in connection therewith under submission undisposed of, some of which were submitted for decision as much as three years ago.' The Supreme Court in its order of November 13, 1970, directed that no cases be assigned to Respondent until further order of the Supreme Court. Respondent was further directed to report weekly to the Supreme Court as to the cases disposed of by Respondent and to report to the Chief Justice of the Supreme Court when all cases under submission has been disposed of by Respondent.

"That this Commission through its Chairman wrote Respondent a letter dated February 23, 1973 to arrange a conference relative to Respondent's docket. That a conference between Respondent and the Commission's Chairman was had shortly thereafter wherein a discussion was had relative to Respondent 'being late for court and holding cases under submission too long.'

"That on May 10, 1973 the Commission again wrote Respondent wherein it pointed out that it had received information that Respondent was habitually late for court and was habitually dilatory in disposing of cases, motions and legal matters.

"These warnings to Respondent regarding his dilatoriness in ruling on legal matters and arriving at Court late went unheeded.

"Testimony was presented at the hearing on behalf of Respondent by several attorneys, that Respondent possesses good judicial temperament, and was a fair-minded and intelligent Judge on the Circuit Bench of St. Louis County.

## "CONCLUSIONS OF LAW

"Based upon the foregoing Findings of Fact, the Commission makes the following Conclusions of Law:

"Respondent violated Supreme Court Rule 2.02 by failing to administer the matters before his Court in a speedy manner and by failing to conduct the business of his Court so as to make it useful to litigants and to the community.

"Respondent violated Supreme Court Rule 2.06 by failing to exhibit an industry and application commensurate with the duties imposed upon him.

"Respondent violated Supreme Court Rule 2.07 by failing to be prompt in the performance of his judicial duties and failing to recognize that the time of litigants, jurors and attorneys is of value and that habitual lack of punctuality on his part justifies dissatisfaction with the administration of the business of the Court.

"Respondent violated Supreme Court Rule 2.08 by failing to organize his Court with a view to the prompt and convenient dispatch of his business.

"Respondent violated Supreme Court Rule 2, Canon 3, effective July 1, 1975, by failing to dispose promptly of the business of his Court and failing to diligently discharge his responsibilities.

"Respondent violated Supreme Court Rule 12.13 by failing to respond to the Interrogatories directed to Respondent by the Commission on July 5, 1975.

"Respondent violated Supreme Court Rule 2.28 by being an active promoter of the interests of one political party as against another, making payment of contributions to party funds, and through his association and activities with the Normandy Township Republican Club, Respondent engaged generally in partisan activities.

"Respondent violated the provisions of Article V, Section 29F of the Missouri Constitution by making annual dues, contributions to a political party or organization, to-wit, the Normandy Township Republican Club."

We have carefully read the transcript (consisting of 490 pages) and have concluded that the evidence supports the findings of the Commission. Respondent in his brief makes no objection to Findings I and I(a).

Only minor exceptions are taken to most of the other findings of fact. Respondent's counsel do not contest or deny the allegations that respondent was habitually late in arriving at his courtroom in the morning and was habitually dilatory in disposing of cases, motions, etc., that were taken under advisement. As hereinafter more fully discussed they seek to justify such conduct because it is said to have resulted from a mental condition and hence was involuntary.

In view of the position taken by respondent we will not discuss the evidence in detail. There are some items, however, which should be mentioned. As a result of complaints that had been received this court, on November 13, 1970, made an order directing that respondent not be assigned any new cases for hearing until he had decided all matters under submission. At that time he had 23 cases under submission, one of which had been submitted in June, 1967, just five months after respondent had assumed office. He had decided all but one of the cases when we permitted him to resume taking assignments on February 1, 1971.

Apparently respondent did not change his manner of conducting court business as the chairman of the Commission conferred with him in February, 1973 and wrote him in May of 1973 in regard to the complaints. On July 5, 1975, interrogatories were directed to respondent by the Commission seeking information as to the cases under submission and the dates submitted as well as a list of the cases adjudicated between May 25 and July 5, 1975. Respondent was granted additional time until August 11, in which to answer but never submitted any response whatsoever. In his testimony respondent said his records were not in very good shape and he got busy and just never got around to preparing the answers. There is no validity to that excuse. Most circuit judges could have prepared the information in no more than one hour. We can understand that it might have taken respondent longer since there was testimony that the desk, table and some chairs in his office were covered with files, correspondence and other papers to a depth of from 6 to 18 inches. However, we think he should have been able to assemble the information in one day. It is our view that respondent failed to answer those interrogatories either because he knew the facts would be very unfavorable to him or else he just didn't want to bother with assembling it or both. In any event his failure to respond was inexcusable and constitutes a strong factor in supporting the recommendation of the Commission.

There was also testimony that because of complaints he had received, the court administrator for the circuit suggested to respondent that he not try any cases during the summer of 1975 until he had decided everything under submission. Respondent did not follow that suggestion.

It is obvious that respondent had strong warnings between November, 1970, and the date this proceeding was commenced that his record was unsatisfactory and under scrutiny but there was no permanent change in his manner of conducting the business of the court.

Respondent testified that he would get up of a morning at 5:30 but that he moved slowly and didn't function very well of a morning; that although it was only a 20 minute drive to the courthouse he had difficulty getting there before 9:30 or perhaps a little later; that he worked several nights a week until 9 or 10 o'clock but that it took considerable time for him to decide matters because he wanted to be sure he had fully considered all the facts and law.

At the conclusion of the hearing it was suggested by respondent's attorneys that an explanation of respondent's deficiencies might be found by a physical and mental examination to which they said he had agreed to submit. In response the Commission agreed to withhold a decision until the examination was made. It was also agreed at that time that, as a result of the examination, respondent had the option of requesting the Commission to consider disability retirement under Rule 12.06 if such appeared desirable and appropriate.

The examinations were made and on February 17, 1976, a report of Dr. Murray E. Finn, a psychiatrist, was submitted to the Commission, which, after reciting the respondent's history, concluded as follows:

"DIAGNOSIS: The diagnosis is Obsessive Compulsive Neurosis.

"COMMENT: This patient has an obsessive reaction which accounts for his difficulty in reaching decisions and other conflict in his position as a judge. All physical findings were within normal limits. This patient has a rather marked obsessive compulsive personality disorder which is causing serious interference with his work."

At the request of respondent's attorneys the report was made a part of the record. It undoubtedly was considered by the Commission although it was not referred to in its findings of fact. Respondent did not request that the Commission consider his retirement under Rule 12.06. Instead, his attorneys requested that respondent be permitted to continue his work for 90 days while undergoing treatment by Dr. Finn in an effort to determine whether he could be cured or improved by such treatment. The delay was not granted.

■ In this court counsel for respondent contend that it would be inappropriate to remove respondent for cause because the matters complained of were involuntary due to his mental condition. It is suggested instead that we in some manner terminate this proceeding and permit respondent to resume his duties as a circuit judge under appropriate supervision; that he would continue treatment by Dr. Finn until it could be determined whether or not his condition could be cured.

We cannot grant that request. Respondent is precluded from acting as a judge while this matter is pending. Sec. 27(4), Art. 5, Mo.Const. And we have concluded that the evidence does not justify terminating this proceeding in a manner favorable to respondent. Even if we assume (but do not decide) that the fact respondent's conduct might have been involuntary would be a defense, we do not think the facts would support same. We note that when strong measures were taken respondent could change his manner of conduct. For example, when the order of this court was made in 1970 he decided 22 cases in about 75 days. Also, when the Commission warned respondent in 1973 concerning complaints it had received he reported to the Commission on June 15, 1973, that during the preceding four weeks he had always arrived at the courthouse between 8:45 and 9:00 a. m. Unfortunately his conduct in that regard did not continue.

As indicated, we rule that the evidence does not support the request made and that it does support the recommendation of the Commission.

■ In the alternative respondent's counsel request that, if we cannot grant the preceding request, that respondent be found to be suffering from a mental infirmity and be retired from office under Rule 12.06. We do not have jurisdiction to take that action. Under the Constitution and Rule 12.06 we can only retire a judge from office for disability upon a recommendation of the Commission supported by the affirmative vote of four members thereof.

■ At the time of oral argument there was some discussion, which resulted from a question by one of the judges, about the possibility of remanding this case to the Commission with directions that it consider respondent's retirement under Rule 12.06. We do not think respondent is in a position to request that action. As heretofore indicated, the Commission gave respondent the option of requesting that action after his examination was completed and he did not do so. Instead, he permitted the matter to go to a decision, no doubt hoping that the decision would be something more favorable than removal. Now, after the Commission has recommended removal from office and other requests for relief have been rejected by this court, we rule that respondent is in no position to request that we remand the case for consideration of an entirely different type of proceeding.

 Another ground for removal was the fact that respondent continued as a member of the Normandy Township Republican Club from the time St. Louis County adopted the nonpartisan court plan until June 30, 1975. He attended the regular monthly meetings; paid $2.00 annual dues and at one time obtained a magistrate to swear in the officers of the club. Respondent says that his membership in the club was continued under the good faith belief that such did not violate the Constitution or Supreme Court Rule and that the two dollar payment of membership dues was a de minimus matter.

Section 29(f), Mo.Const., provides that, "No judge of any court of record in this state, appointed to or retained in office in the manner prescribed in sections 29(a)–(g), shall directly or indirectly make any contribution to or hold any office in a political party or organization, or take part in any political campaign." Rule 2.28 (in effect at the time in question) stated, in part, that a judge "should neither accept nor retain a place on any party committee nor act as party leader, nor engage generally in partisan activities."

We have concluded that respondent's membership in the partisan club violated both the Constitution and Rule. We have the view that it was the intention of the people in adopting the nonpartisan court plan to prohibit the judges selected thereunder from engaging in any partisan political activity. Although it was small, the annual two dollar payment to the club was a contribution to a political organization. And respondent's membership and activities in the club violated our rule which prohibited engaging "in partisan activities." We need not determine whether that conduct alone would have justified removal. It is sufficient in this case to hold that it constituted additional support for the recommendation of the Commission.

We have performed our function under Rule 12.08(b), have reviewed the record and have concluded that the recommendation of the Commission should be followed. It is accordingly ordered, adjudged and decreed by this court that respondent, Paul E. Corning Jr., be and is hereby removed from office as a judge of the twenty-first judicial circuit of Missouri.

SEILER, C. J., and MORGAN, HENLEY, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., concurs in result in separate opinion filed.

BARDGETT, Judge (concurring in result).

I concur in result. However, I desire to state that I have substantial doubt as to the views expressed in the principal opinion concerning Art. V, sec. 29(f), Mo.Const., and whether or not it was violated in this case.