658 P.2d 174

**In re the Matter of Tim WEEKS, East Phoenix Justice of the Peace Court No. 1.**

**No. JUD–5.**

Supreme Court of Arizona, In Banc.

Jan. 26, 1983.

522

Mallin, Lemberg & Arnold by Charles L. Arnold, Phoenix, for Commission on Judicial Qualifications.

Castro, Zipf & Rogers by Alfred J. Rogers, Phoenix, for respondent.

CAMERON, Justice.

The Arizona Commission on Judicial Qualifications found that the respondent, Tim Weeks, Justice of the Peace of the East Phoenix Precinct of Maricopa County, Arizona, had violated Canons 1, 2, and 3 of the Code of Judicial Conduct, Rule 45, Rules of the Supreme Court, 17A A.R.S., and art. 6.1 § 4 of the Constitution of the State of Arizona, and censure by this court was recommended. We have jurisdiction pursuant to art. 6.1 of the Arizona Constitution and Rule 11 of the Rules of Procedure for the Commission on Judicial Qualifications, 17A A.R.S.

We must answer two questions in this matter:

1. Is failure to dispose of matters under advisement within a reasonable time a violation of the Canons of the Code of Judicial Conduct and art. 6.1 § 4 of the Constitution of the State of Arizona?

2. Is the signing of a false statement that a judge has no cases over 60 days old under advisement a violation of these same Canons and the Constitution of the State of Arizona?

The facts necessary for a determination of this matter are not in dispute and are as follows. Respondent was a duly elected Justice of the Peace for the East Phoenix Precinct No. 1, Maricopa County. In February of 1980, as a result of complaints filed with the Commission on Judicial Qualifications, respondent met with the Commission and discussed the reasons for delay in his court, particularly in rendering decisions on submitted matters. The Commission on Judicial Qualifications made specific suggestions to respondent regarding his office practices, and requested that the respondent submit status reports to the Commission. After receiving a series of reports, the Commission, believing that the respondent had resolved his difficulties of undue delay in deciding matters under advisement, terminated its inquiry concerning the conduct of the respondent.

Thereafter, further complaints were received by the Commission, and specifically:

(a) Matter submitted for decision and taken under advisement 9 June 1981, ruling dated 1 March 1982;

(b) Case submitted for decision and taken under advisement 24 June 1981, ruling dated 22 October 1981;

(c) Claim submitted for decision and taken under advisement 21 July 1981, ruling dated 1 March 1982; and

(d) Matter submitted for decision and taken under advisement 15 October 1981, ruling dated 1 March 1982.

While these cases were pending for decision, the respondent completed and filed with the Maricopa County finance department, affidavits for the months of September 1981 through January 1982, certifying under oath that no cause had been submitted to him for decision which remained pending or undetermined for 60 days or more since the date of submission for decision. These affidavits were made pursuant

to A.R.S. § 11–424.02 which reads as follows:

> "A.   A justice of the peace or a justice of the peace pro tempore shall not receive his salary unless such justice either certifies that no cause before such justice remains pending and undetermined for sixty days after it has been submitted for decision or there is submitted by the chief justice of the Arizona supreme court a certification that such justice of the peace has been physically disabled during the preceding sixty days or that good and sufficient cause exists to excuse the application of this section to particularly identified litigation then pending."

After a hearing at which time the respondent appeared and discussed the heavy workload of his court, the Commission made Findings of Fact and the following Conclusions of Law and Recommendation:

## "CONCLUSIONS OF LAW

1.   That the above described conduct of Judge Tim Weeks in completing the monthly salary affidavits as set forth in Findings of Fact No. 12 and 13 above, is violative and in contradiction of the terms and provisions of A.R.S. § 11–424.-02.

2.   That the above-described conduct of Judge Tim Weeks violated Canons 1, 2, and 3 of the Code of Judicial Conduct as adopted by Rule 45, Rules of the Supreme Court of the State of Arizona, effective January 1, 1976.

3.   That the above-described conduct of Judge Tim Weeks constituted willful and persistent failure to perform his duties within the meaning of Article VI.I, Section 4, of the Constitution of the State of Arizona.

4.   That the above-described conduct of Judge Tim Weeks constituted conduct prejudicial to the administration of justice and said conduct brought his office into disrepute within the meaning of Article VI.I, Section 4 of the Constitution of the State of Arizona.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is the recommendation of the Commission to the Arizona Supreme Court, pursuant to Article VI.I, Section 4, of the Arizona Constitution, that Judge Tim Weeks be publically censured as a result of his misconduct as found by this Commission."

Prior to the final recommendation of the Commission, the respondent resigned his office effective 18 October 1982.

■   Ordinarily, given the respondent's resignation, this matter would be dismissed as moot, since the respondent no longer has a legally cognizable interest in the outcome, and it would not be reasonably expected that he would be in the same legal posture again. *See Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1182–83, 71 L.Ed.2d 353, 356–57 (1982). We note, however, that because the respondent did not, in the course of his resignation, agree not to seek this office in the future, a determination of the matter is procedurally appropriate. *Cf. Vaughan v. Bower,* 313 F.Supp. 37, 40 (D.Ariz.1970), aff'd 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970) (a defendant previously engaged in illegal conduct "cannot, by his own voluntary conduct, moot the case and thereby deprive the Court of jurisdiction"); see also *Walling v. Alaska Pacific Consol. Mining Co.,* 152 F.2d 812, 815 (9th Cir.1945), cert. denied 327 U.S. 803, 66 S.Ct. 960, 90 L.Ed. 1028 (1946).

> More immediately, we have held that "if it appears that a case raises questions which should be decided for the guidance of public officers in the future administration of law, it will not be dismissed as moot, but will be determined upon its merits." *Corbin v. Rogers,* 53 Ariz. 35, 39, 85 P.2d 59, 61 (1938); *accord Campbell v. Harris,* 131 Ariz. 109, 111, 638 P.2d 1355, 1357 (App.1981).

We think that this is a proper case in which to apply this rule, and we therefore proceed to consider the merits of this matter.

Our duties in regard to recommendations of the Commission on Judicial Qualifications have been previously stated:

"Judicial discipline is analogous to lawyer discipline in that both lawyer discipline commissions and judicial qualifications commissions can only recommend to the Supreme Court the disposition to be made in each case of discipline. While we will give serious consideration to the findings of the attorney discipline committee, we must also make an independent determination of the facts of the case, (citations omitted), and we are the ultimate trier of the facts as well as the law. (citations omitted) Likewise in judicial discipline matters, we must make an independent evaluation, or de novo review on the record, of the evidence and recommendations of the Commission on Judicial Qualifications. (citations omitted)" *Matter of Haddad,* 128 Ariz. 490, 491, 627 P.2d 221, 222 (1981).

### DELAY

■ We believe that unnecessary and unwarranted delay in the rendering of a decision violates the Arizona Constitution which provides for removal or censure of a justice of the peace for "wilful and persistent failure to perform his duties * * *." Ariz. Const. art. 6.1 § 4. We also believe this conduct of a judge violates the Code of Judicial Conduct and specifically Canon 3(a)(5) which reads, "A judge should dispose promptly of the business of the court." What constitutes an unreasonable delay will usually depend upon the facts in each case. In Arizona, however, for a justice of the peace, the legislature has set by statute, A.R.S. § 11–424.02, the time limit within which justices of the peace should act in deciding cases under advisement.

In the cases that have been decided regarding delay, the courts have unanimously held that unnecessary, unwarranted delay is a violation of the Canons of Judicial Conduct which subjects a judge to judicial discipline. The Supreme Court of New York, Appellate Division, Second Department, confirmed, among other things, that

"respondent neglected and failed to render timely decisions with respect to at least 44 written motions presented to the City Court in criminal proceedings, to the detriment and prejudice of the rights of the parties to said proceedings. In some instances the delay in deciding these motions was one and one-half years." *In the Matter of Albert S. MacDowell,* 393 N.Y.S.2d 748, 750, 57 A.D.2d 169, 171 (1977).

The court went on to state:

" * * * the conduct as evidenced by the charges we have sustained constitutes a violation of the foregoing principles, and demonstrates an unwillingness or inability on the part of the respondent to discharge his adjudicative and administrative responsibilities. The resulting impediment to the due and proper administration of justice in the City of Newburgh renders the respondent's retention as a Judge of the City Court improper, despite the absence of any finding of venality." 393 N.Y.S.2d at 751, 57 A.D.2d at 174.

In *In re Corning,* 538 S.W.2d 46 (Mo. 1976), the respondent was charged with having failed

"on numerous occasions to rule on motions, trials and other matters before [his] Court with reasonable dispatch after said matters were submitted to [him] for ruling, thereby causing inconvenience." 528 S.W.2d at 47.

The respondent was removed from office after having failed, as in the instant case, to respond to efforts of the judicial qualifications commission to rehabilitate the respondent.

Frequently, lack of diligence is coupled with other derelictions of duty, and the Michigan Supreme Court in *In The Matter of Heideman,* 387 Mich. 630, 198 N.W.2d 291 (1972), removed a judge for failure to order jury trials upon request, failure to promptly process, try and dispose of cases that came before him, as well as failure to keep an accurate record of the proceedings. In *In the Matter of Kohn,* 568 S.W.2d 255 (Mo. 1978), the respondent was censured for discourtesy to attorneys, as well as for delay in deciding cases under submission.

In the instant case, the Commission on Judicial Qualifications made a conscientious effort to assist respondent in developing office procedures to prevent unnecessary delay in deciding matters under advisement but to no avail. As is recognized by the reporter's notes to the Code of Judicial Conduct:

> "Failure of a judge to dispose promptly of the business of the court when there is no justifiable reason for delay reflects adversely on the entire judicial system." E. Thode, Reporter's Notes to Code of Judicial Conduct 54–55 (1973).

We believe that unreasonable delay in deciding matters under advisement is a valid ground for discipline, and in the instant case, the Commission's Conclusions of Law Numbers 2, 3, and 4 are approved by this court. Canon 3(A)(5), Rule 45, Rules of the Supreme Court, 17A A.R.S.

## FALSE AFFIDAVITS

It is uncontested that the respondent signed affidavits claiming to have no cases under advisement for more than 60 days, in order to obtain his salary as required by the statute, when in fact he did have matters under advisement for longer than that period of time. Admittedly, respondent and the Commission's specially appointed attorney signed a stipulation of facts dated 23 June 1982 agreeing that the "filing of said inaccurate monthly salary affidavits was not done intentionally, knowingly, or recklessly by respondent, but was due to an oversight on his part." Even with this stipulation, however, we believe that the filing of the false affidavits constitutes "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Art. 6.1 § 4, supra. The signing of a series of false affidavits by a judge brings the integrity of the entire judicial system into question and is prejudicial to the administration of justice. This conduct violates Canons 1 and 2 of the Code of Judicial Conduct as adopted by this court. We agree with the Commission in its Conclusion of Law Number 1, and the Commission's Recommendation.

The respondent Tim Weeks is hereby censured by this court.

GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice (concurring and dissenting).

At the time the Judicial Qualifications Commission made its finding and recommendation the respondent was holding the office of justice of the peace, a "judge" as defined in Article VI.I Section 5 of the Arizona Constitution. I agree with the majority that the commission acted within its jurisdiction.

There is no disagreement on my part that the case is not moot when issues are raised which should be decided for the guidance of public officers in the future administration of their office. I also concur in the majority's reasoning and holding concerning the findings of the commission. My disagreement with the majority concerns the suggestion that this court or the commission continues to have jurisdiction over a judge after his resignation.

Section 4 of Article VI.I of the Arizona Constitution grants this court the power to retire, censure or remove a judge for specified acts of misconduct. If the individual is not a judge this court cannot retire, censure or remove him from what he no longer has—the office of judge.

What the majority is really saying in this case is that a judge cannot avoid censure or removal by the simple device of resigning and running for office again at the next election. If the majority had the power to amend the constitution, the above situation could be prevented. Since the amendment of the constitution is not within the power of this court I dissent from any attempt to change the plain meaning of the constitution by interpretation to achieve a desirable result.