364 S.E.2d 20

**In the Matter of A.L. SOMMERVILLE, Jr., Judge Fourteenth Judicial Circuit.**

**No. 17592.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1987.

---

Charles R. Garten, Charleston, for Judicial Hearing Bd.

A.L. Sommerville, Webster Springs, for respondent.

MILLER, Justice:

This judicial disciplinary proceeding arises from a complaint filed with the Judicial Hearing Board (Board) by the Judicial Investigation Commission (Commission) charging Circuit Judge A.L. Sommerville, Jr., with a violation of Canon 3A(5) of the Judicial Code of Ethics.[1] At the hearing, the Board dismissed the complaint based on a previous per curiam order issued by this Court in *In the Matter of: C. Reeves Taylor*, No. 66–83 (Feb. 15, 1985). It interpreted this order to mean that an unreasonable delay in deciding a case could not be brought into the judicial disciplinary procedure. The only recourse was to bring a writ of mandamus before this Court. Finding the Board erred as a matter of law in its interpretation of the *Taylor* order, we remand this case to the Board for the development of a proper record.

On April 3, 1986, the Commission filed a complaint with the Board alleging that on October 27, 1979, Ms. Patricia A. Monteith, a teacher in the Webster County school system, filed a petition for a writ of certiorari to review her dismissal by the Webster County Board of Education. On November 6, 1979, a response to the petition was filed on behalf of the Webster County Board of Education. On December 7, 1979, Judge Sommerville ordered the parties to submit their briefs. Ms. Monteith filed a motion on August 10, 1981, seeking leave to amend her complaint which was granted by an order dated September 8, 1981.

Thereafter, on October 11, 1985, Ms. Monteith filed her complaint with the Commission against Judge Sommerville. At that time, no decision had been rendered in the Webster County Circuit Court civil action.[2]

We believe the Board misunderstood our ruling in *Taylor* where we referred to our earlier case of *State ex rel. Patterson v. Aldredge*, 173 W.Va. 446, 317 S.E.2d 805 (1984). In that case which was an original mandamus, we ordered the judge to make a ruling, stating in Syllabus Point 1:

"Under article III, § 17 of the West Virginia Constitution, which provides that 'justice shall be administered without sale, denial or delay,' and under Canon 3A(5) of the West Virginia Judicial Code of Ethics (1982 Replacement Vol.), which provides that 'A judge should dispose promptly of the business of the court,' judges have an affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission."

However, we pointed out in *Patterson* that an unreasonable delay in disposition of cases had been found by a number of courts to be grounds for disciplinary sanctions.

"Canon 3A(5) of the West Virginia Judicial Code of Ethics, as well as the principle contained within its admonition, is often utilized as a foundation for the imposition of judicial discipline for unreasonable delays in the disposition of court business. *See, e.g., In re Weeks*, 134 Ariz. 521, 524–25, 658 P.2d 174, 177–78 (1983); *In re Heideman*, 387 Mich. 630, 631–32, 198 N.W.2d 291, 291–92 (1972); *In re Anderson*, 312 Minn. 442, 447, 252 N.W.2d 592, 594 (1977); *In the Matter of Kohn*, 568 S.W.2d 255, 260–62 (Mo.1978); *In re Corning*, 538 S.W.2d 46, 48–50 (Mo.1976); *In the Matter of MacDowell*, 57 A.D.2d 169, 174, 393 N.Y.S.2d 748, 751

---

1. The complaint alleged a violation of Canon 3 A(5) of the Judicial Code of Ethics based on the alleged unreasonable delay in the disposition of a civil case. Canon 3 A(5) provides, in pertinent part, as follows:

   "The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

   A.  Adjudicative Responsibilities.

   .    .    .    .    .

   (5) A judge should dispose promptly of the business of the court."

2. A final ruling was made on February 24, 1986, which was adverse to Ms. Monteith. She was granted an appeal from this decision on April 4, 1987. *See Monteith v. The Board of Education of Webster County*, Appeal No. 17613.

(1977); *Judicial Qualifications Commission v. Cieminski,* 326 N.W.2d 883, 886 (N.D.1982); *Matter of Cieminski,* 270 N.W.2d 321, 324 (N.D.1978)." *State ex rel. Patterson v. Aldredge,* 173 W.Va. at 447, 317 S.E.2d at 807.

We elaborated on this law in *Taylor,* by citing additional cases that recognized judicial disciplinary sanctions could be warranted for an unreasonable delay in disposing of a case:

"Additionally, in *Patterson* we cited cases from other jurisdictions where unreasonable delays in the disposition of court business constituted all or part of the basis for the imposition of judicial discipline. 173 W.Va. at 447, 317 S.E.2d at 807. *See also Powers v. Board of Control,* 434 So.2d 745, 750 (Ala.1983); *In Re Jensen,* 24 Cal.3d 72, 593 P.2d 200, 154 Cal.Rptr. 503 (1978); *McCartney v. Commission on Judicial Qualifications,* 12 Cal.3d 512, 526 P.2d 268, 116 Cal.Rptr. 260 (1974), *overruled on other grounds, Spruance v. Commission on Judicial Qualifications,* 13 Cal.3d 778, 532 P.2d 1209, 119 Cal.Rptr. 841 (1975); *In Re Complaint Against Van Susteren,* 118 Wis.2d 806, 348 N.W.2d 579 (1984); *In Re Complaint Against Grady,* 118 Wis.2d 762, 348 N.W.2d 559 (1984)."

This was followed by a summary of the general principles extracted from the various cases which we had earlier cited:

"A review of the decisions involving judge-caused delay evidences various categories of conduct which have been found to rise to the level of an ethical violation. Violations have been found where there was: (1) a substantial number of delayed decisions; (2) a small number of delayed decisions involving particularly long delays; and (3) proof of vindictive or other malicious motive behind an instance of delay."

In the last section of the *Taylor* order, we made an individual analysis of a number of the cases that dealt with judicial disciplinary proceedings arising from unreasonable delay in the disposition of cases.[3]

■ In *Taylor* we agreed with the Board's conclusion that the complaint against Judge Taylor should be dismissed because the factual record showed a history of substantial diligence. Among the factors we considered in determining whether there has been an unreasonable delay in disposing of a case were the following: the amount of delay from the date the case was ripe for decision; the complexity of the case; the administrative and

---

**3.** The language from *Taylor, supra,* is:

"These cases underscore that courts are not hesitant to impose disciplinary sanctions, ranging from censure to removal, where there is evidence of a pattern of delay, whether it is the result of wilful neglect of responsibilities or simply a manifest inability to effectively perform the duties of judicial office. *See, e.g., In Re Weeks,* 134 Ariz. 521, 658 P.2d 174 (1983) (numerous instances of unnecessary delay by justice of the peace in deciding cases warranted public censure); *In Re Jensen, supra,* (persistent failure to decide submitted matters within 90–day period as required by state constitution and regular omission of these cases from reports to avoid the withholding of salary held to support public censure); *In Re Heideman,* 387 Mich. 630, 198 N.W.2d 291 (1972) (persistent failure to promptly process, try and dispose of cases and failure to keep accurate records of court proceedings warranted removal of district judge); *In Re Anderson,* 312 Minn. 442, 252 N.W.2d 592 (1977) (failure to render timely decisions in twelve matters submitted to judge, together with other misconduct, held to justify suspension without pay for three months); *In Re Kohn,* 568 S.W.2d 255 (Mo. 1978) (censure held appropriate under the circumstances rather than suspension recommended by disciplinary commission where probate court judge unreasonably delayed rendering decisions in two cases, taking four years to decide one and twenty-one months to decide the other); *Judicial Qualifications Commission v. Cieminski,* 326 N.W.2d 883 (N.D.1982) (county court judge ordered suspended without pay for three months for misconduct which included unreasonable delay in a substantial number of cases); *In Re Complaint Against Van Susteren, supra,* (persistent failure to organize court and supervise personnel resulting in substantial delays in over 100 probate cases, together with other misconduct held to warrant two-year suspension without pay); *In Re Complaint Against Grady, supra,* (persistent failure to promptly decide matters and false reporting concerning pending matters held to warrant reprimand)."

judicial workload of the judge, the number of special assignments given to the judge; the amount of vacation time taken; and other complaints involving delayed decisions made against the judge.[4]

■ In this case the problem is that the Board made no factual record, but merely held as a matter of law that a disciplinary charge could not be sustained based on an unreasonable delay by a judge in disposing of a case. As both *Patterson* and *Taylor* demonstrate, this is a clear misunderstanding of our law.

■ In the past, when we have been confronted with an inadequate record from an administrative agency subject to the supervision of this Court, such that we are unable to make a proper determination of the merits of the case, we have remanded the case for additional factual development as indicated by Syllabus Point 2 of *In re Brown*, 164 W.Va. 234, 262 S.E.2d 444 (1980):

> "In cases involving reinstatement proceedings, we require, under this Court's supervisory powers, that the Committee on Legal Ethics of The West Virginia State Bar shall hold an evidentiary hearing to enable a record to be made on the issues relating to the petitioner's qualifications to have his license reinstated."

Much the same rule has been applied to appeals when we cannot determine from the record what judgment should be rendered, as illustrated by Syllabus Point 2 of *South Side Lumber Co. v. Stone Construction Co.*, 151 W.Va. 439, 152 S.E.2d 721 (1967):

> "When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development."

*See also, Gooden v. Frisby,* 176 W.Va. 547, 346 S.E.2d 66 (1986); *Wells v. City of Fairmont,* 173 W.Va. 519, 318 S.E.2d 463 (1984); *White v. Bordenkircher,* 169 W.Va. 239, 286 S.E.2d 686 (1982); *Shannon v. Shannon,* 168 W.Va. 108, 282 S.E.2d 288 (1981); *Parkway Fuel Serv., Inc. v. Pauley,* 159 W.Va. 216, 220 S.E.2d 439 (1975); *Blevins v. May,* 158 W.Va. 531, 212 S.E.2d 85 (1975).

For the foregoing reason, we remand this matter to the Board to conduct a further hearing consistent with this opinion.

Remanded.

---

4. These facts were:

"The Board's findings initially incorporate the agreed stipulations of fact relating to the subject divorce action, which indicate that approximately twenty-two months elapsed between the date this action was ripe for decision and the date the Judge entered an opinion and final order.

"Additional findings of fact were made based upon the testimony of Judge Taylor and one of his witnesses, Court Administrator Paul Crabtree. The following findings appear particularly relevant to the Board's proposed disposition of this case. First, Judge Taylor, as Chief Judge of the Twenty-first Judicial Circuit, was charged with the administrative duties for that circuit as well as management and supervision of the magistrate system of each of the three counties within the circuit. Second, the divorce action involved in this complaint was contested in all primary matters—grounds, child custody, and property settlement. Third, as well as carrying a full load of criminal and civil cases in the three counties of his circuit, Judge Taylor received twenty-nine special assignments outside his circuit between 1980 and 1983 from this Court, and also made himself available, on call, for a period of 115 days to assist judges outside his circuit during their vacations or absence. We note that during this period no judge in this State received more special assignments than Judge Taylor. Fourth, during 1982 Judge Taylor took two weeks annual leave and during 1983 took no vacation time. Finally, the Board found no other instances of complaint against Judge Taylor for delay. Based upon these findings the Board recommends that this Court dismiss the complaint."