399 S.E.2d 888

**In the Matter of Wayne KING,
Family Law Master.**

**No. 19282.**

Supreme Court of Appeals of
West Virginia.

Nov. 30, 1990.

Wayne King, Clay, pro se.

Charles R. Garten, Judicial Investigation
Com'n, Charleston.

PER CURIAM:

This judicial disciplinary proceeding is before the Court pursuant to Rule III. D. of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters. This proceeding was initiated by the Judicial Investigation Commission

against family law master Wayne King.[1] The Commission charged family law master King with violation of Canon 2A, Canon 3A(1) and (5), and Canon 3B(1) of the Judicial Code of Ethics.[2] The West Virginia Judicial Hearing Board, after conducting a hearing on the matter, recommended to this Court that Wayne King be publicly censured for violation of Canon 2A and that the charges alleging violation of Canon 3A(1) and (5) and Canon 3B(1) be dismissed. After an independent review of the record, we adopt the recommendations of the Judicial Hearing Board.

## I.

Family law master Wayne King presided over a hearing in Harrison County, West Virginia, on July 25, 1988, in which Ms. Janette Marie Worley sought an increase in child support payments. Because the child was seventeen years of age at the initiation of the action, Ms. Worley and her attorney, Bonnie H. Kratovil, desired a prompt decision from family law master King. At the conclusion of the hearing, Mr. King requested additional medical and insurance records from both parties. That information was provided to Mr. King on August 3, 1988, and final information was provided by Ms. Kratovil on September 13, 1988.

After making two written inquiries regarding the status of the decision in September 1988 and October 1988, Ms. Kratovil contacted Mr. King's secretary by telephone in mid-October and was advised that a written decision would be forthcoming. In early November 1988, Ms. Kratovil again contacted Mr. King's secretary and was informed that the decision had been mailed on October 31, 1988.

By November 21, 1988, the promised decision had not yet been received. On that date, Ms. Worley contacted Penelope Crandall, Director of Family Law Masters, and requested Ms. Crandall's assistance in obtaining a decision from family law master King. Ms. Crandall contacted Mr. King on November 28, 1988, and he informed her that a decision would be mailed on December 2, 1988.

Not having received a decision, Ms. Crandall contacted Mr. King again on December 7, 1988. Mr. King advised Ms. Crandall that the decision had been mailed on December 2, 1988. By December 14, 1988, no decision had yet been rendered. On that date, Ms. Kratovil filed a motion to recuse Mr. King based upon his failure to render a timely decision. Mr. King subsequently rendered his decision, dated December 24, 1988, and filed it with the Circuit Court of Harrison County on December 27, 1988.

In January 1989, Ms. Kratovil requested the tape-recorded transcript of the hearing conducted on July 25, 1988. She required the transcript in order to assist her in preparing exceptions to Mr. King's recommen-

---

1. Mr. King is no longer serving as a family law master. He was initially appointed to a four county region, including Braxton, Clay, Gilmer, and Webster counties. Due to the inability of family law master Cornelia Reep to preside over hearings in her appointed county of Harrison, Mr. King was substituted on this occasion.

2. Canon 2 of the Judicial Code of Ethics provides, in pertinent part:
 A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.
 A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
 Canon 3 of the Judicial Code of Ethics provides, in pertinent part:
 A Judge Should Perform the Duties of His Office Impartially and Diligently.

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of those duties, the following standards apply:
A. Adjudicative Responsibilities.
 (1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
 (5) A judge should dispose promptly of the business of the court.
B. Administrative Responsibilities.
 (1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

dation to be filed with the Circuit Court of Harrison County. Mr. King advised Ms. Kratovil that he had delivered the tapes to the Harrison County Circuit Clerk's office and that the tapes had apparently been misplaced subsequent to that delivery. The tapes were never located, and a hearing was conducted by the Honorable Frank Maxwell, Jr., Judge of the Circuit Court of Harrison County, on April 4, 1989.

Judge Maxwell instructed the litigants to summarize their respective positions and rendered his decision based upon the arguments of counsel. Ms. Worley alleges that the misplacement of the tapes and Judge Maxwell's consequent inability to base his decision upon previously presented evidence caused the final decision regarding an increase in child support payments to be less than anticipated. Specifically, Ms. Worley was concerned that Judge Maxwell did not have an adequate opportunity to base his ruling upon medical testimony which had been introduced at the original hearing. She also contends that she has incurred additional legal expenses due to Mr. King's failure to promptly submit his decision and has lost wages as a result of her attendance at the additional hearing. Nevertheless, Judge Maxwell did order additional child support to be paid to Ms. Worley. While the payments were calculated from the date of the original hearing before Mr. King, Ms. Worley alleges that she was without the additional child support payments for approximately nine months due to Mr. King's failure to promptly submit a decision.

Based upon a complaint received from Ms. Worley, the Judicial Investigation Commission filed a complaint against family law master King with the West Virginia Judicial Hearing Board on October 18, 1989. The complaint alleged that Mr. King had violated Canon 2A, Canon 3A(1) and (5), and Canon 3B(1) of the Judicial Code of Ethics. In essence, the complaint asserted that Mr. King (a) violated Canon 2A of the Judicial Code of Ethics by misrepresenting the status of his decision to Ms. Worley's attorney and to Penelope Crandall, and (b) violated Canon 3A(1) and (5) and Canon 3B(1) of the Judicial Code of Ethics by failing to render a decision in a timely fashion and by misplacing the tape recorded transcript of the original hearing. After a hearing on the merits, the Judicial Hearing Board submitted its recommended findings of fact, conclusions of law, and proposed decision on June 8, 1990. The Hearing Board found that Mr. King had misrepresented the status of his decision to Ms. Kratovil and Ms. Crandall and that such misrepresentation constituted a violation of Canon 2A. The Hearing Board recommended to this Court that Mr. King be publicly censured for violation of Canon 2A. The Hearing Board, however, further found that the Judicial Investigation Commission had failed to prove, by clear and convincing evidence, that Mr. King violated Canon 3A(1) and (5) and Canon 3B(1) of the Judicial Code of Ethics.

In so doing, the Board determined that the case was ripe for decision on September 13, 1988, and that a decision was rendered on December 24, 1988. The Board reasoned that such an approximate three and one-half month interval between the receipt of all evidence and the rendering of a decision did not violate the Judicial Code of Ethics and would not warrant judicial discipline. The Board further found that the Judicial Investigation Commission had failed to prove, by clear and convincing evidence, that Mr. King was responsible for the misplacement of the tapes of the July 25, 1988, hearing. Consequently, the Board recommended that the charges alleging violation of Canon 3A(1) and (5) and Canon 3B(1) be dismissed.

## II.

 The Supreme Court of Appeals of West Virginia has the authority to "make an independent evaluation of the record and recommendations of the Judicial [Hearing] ... Board in disciplinary proceedings." Syl. Pt. 1, in part, *West Virginia Judicial Inquiry Comm'n v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980). *See also* Syl.Pt. 1, *Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990). In addition, we have consistently held that "[u]nder Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of

180

Procedure for the Handling of Complaints Against Justices, Judges[,] ... Magistrates, [and Family Law Masters], the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'" Syl.Pt. 4, *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983).

■ We first address the Board's recommendation for censure. Canon 2A of the Judicial Code of Ethics addresses such improprieties and clearly establishes the standards to which justices, judges, magistrates, and family law masters will be held. Specifically, the text of the Canon states that "impropriety and the appearance of impropriety" must be avoided. Furthermore, the Canon demands that a judge "conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." We find that while no evidence was introduced indicating that family law master King intentionally misled or deceived Ms. Worley, her attorney, or Ms. Crandall, Mr. King's misrepresentations regarding the status of his decision constitute misconduct in violation of Canon 2A. Such acts certainly created the appearance of impropriety and served to undermine public confidence in the integrity of the judiciary. We consequently hold that Mr. King's misrepresentations constitute a violation of Canon 2A warranting public censure.

### III.

■ Next, the Judicial Investigation Commission alleges that Mr. King violated Canon 3A(1) and (5) by failing to render a timely decision. In support of the alleged violation of Canon 3A(1) of the Judicial Code of Ethics, the Commission argues that Mr. King failed to comply with W.Va. Code § 48A-4-4 (1986), requiring family law masters to submit a recommended decision within ten days following the close of evidence on the matter in question.[3] The

Commission further contended that Mr. King's failure to comply with that statutory mandate constituted a violation of Canon 3A(1) of the Judicial Code of Ethics.

The Judicial Investigation Commission also maintained that Mr. King violated Canon 3A(5) by failing to promptly submit a decision. Thus, the Judicial Investigation Commission argues that this Court may find violation of Canon 3A either by relying upon the statutory mandate of W.Va.Code § 48A-4-4 or by simply adjudging Mr. King guilty of unreasonable delay in the decision-making process. We decline to follow either alternative.

■ First, while W.Va.Code § 48A-4-4 requires family law masters to submit decisions within ten days following the close of the evidence, failure to comply with that ten-day limitation is not necessarily grounds for judicial discipline. We have consistently held that the deliberate failure to follow mandatory criminal procedures constitutes a violation of the Judicial Code of Ethics. *In re Saffle*, 178 W.Va. 101, 357 S.E.2d 782 (1987); *In re Wharton*, 175 W.Va. 348, 332 S.E.2d 650 (1985); *In re Markle*, 174 W.Va. 550, 328 S.E.2d 157 (1984); *In re Pauley*, 173 W.Va. 475, 318 S.E.2d 418 (1984). That concept, however, has not been extended to encompass a violation of statutory guidelines for civil practice. Moreover, assuming arguendo that such an extension had been made, the facts of this case simply do not support a conclusion that Mr. King deliberately or intentionally violated W.Va.Code § 48A-4-4. This case is more analogous to the situation in which a judge commits a legal error with no malicious intent. We have concluded that a judge's action does not constitute a violation of Canon 2 or Canon 3 where the judge has committed a legal error with no intent to prejudice the rights of the party. *Dostert*, 165 W.Va. at 246, 271 S.E.2d at 434; *See also West Virginia Judicial In-*

---

3. West Virginia Code § 48A-4-4, as it appeared prior to the 1990 amendments, stated in pertinent part:

(b) A master who has presided at the hearing pursuant to section two of this article shall recommend a decision to the circuit court within ten days following the close of the evidence. Before the recommended decision is made, the master may, in his discretion, require the parties to submit proposed findings and conclusions and the supporting reasons therefor.

*quiry Comm'n v. Casto,* 163 W.Va. 661, 263 S.E.2d 79 (1979). Absent evidence of deliberate, intentional failure to adhere to statutory guidelines, malicious intent to prejudice the rights of the party, or other improper motive, judicial discipline must not be imposed for failure to comply with statutory time limitations.[4]

In advancing the second prong of its Canon 3A violation argument, the Judicial Investigation Commission attempts to utilize the principles enunciated in Canon 3A(5) to support the imposition of judicial discipline for unreasonable delays. Furthermore, the Commission argues that Mr. King violated Article III, Section 17 of the West Virginia Constitution, requiring prompt disposition of matters pending before the court.[5]

While we recognize the affirmative duties placed upon the judiciary by Canon 3A(5) and the West Virginia Constitution, the interpretation of such intangible standards as "prompt disposition" and "unreasonable delay" must necessarily be scrutinized in light of the complexity of each individual case. As acknowledged by the Judicial Investigation Commission, we have not enunciated precise time limitations within which judges must render decisions in order to avoid judicial discipline. Such an endeavor could serve only to create an unworkable and arbitrary guideline which would inevitably fail to consider the intricacies (or lack thereof) in each individual case.

Although no precise time limitations have been established, we have had ample opportunity to consider the circumstances under which unreasonable delay may constitute grounds for disciplinary action. In *State ex rel. Patterson v. Aldredge,* 173 W.Va. 446, 317 S.E.2d 805 (1984), for instance, we held that a thirty-three month delay between the initial hearing and the

filing of a mandamus action demanding a decision was unreasonable. We noted in *Patterson* that Canon 3A(5) has often been "utilized as a foundation for the imposition of judicial discipline for unreasonable delays in the disposition of court business." *Id.* 173 W.Va. at 447, 317 S.E.2d at 807. In *Patterson,* the respondent judge was directed to render a final decision within thirty days. No judicial discipline for the thirty-three month delay, however, was imposed.

Similarly, in *In re Sommerville,* 178 W.Va. 694, 364 S.E.2d 20 (1987), we recognized that a disciplinary charge may be based upon unreasonable delay in disposing of a case. In *Sommerville,* the matter was remanded for additional factual development and further hearing to determine the appropriateness of a disciplinary charge. In discussing the general parameters of the issue of unreasonable delay, however, we noted that numerous factors must be considered in analyzing the allegations of delay. The factors to be considered "in determining whether there has been unreasonable delay" include the following: "the amount of delay from the date the case was ripe for decision, the complexity of the case, the administrative and judicial workload of the judge, the number of special assignments given to the judge, the amount of vacation time taken, and other complaints involving delayed decisions made against the judge." *Id.* 178 W.Va. at 697–98, 364 S.E.2d at 23–24.

As we recognized in *Sommerville,* courts dealing with judicial disciplinary proceedings arising from unreasonable delay in the disposition of cases have seldom imposed judicial discipline for isolated incidents of delay. Disciplinary sanctions are more frequently imposed upon offenders who exhibit an extensive pattern of delay. If, for example, an individual engages in numer-

---

4. A party desiring a ruling from a judge may also request relief by filing a writ of mandamus seeking to compel the judge to render a decision. The parties in the present case could certainly have followed that procedure to acquire a ruling.

5. West Virginia Constitution Article III, Section 17 provides as follows:

"The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

ous instances of unnecessary delay in deciding cases or persistently fails to adequately perform administrative functions, disciplinary sanctions will be imposed. *See,* e.g., *In re Weeks,* 134 Ariz. 521, 658 P.2d 174 (1983); *In re Alvino,* 100 N.J. 92, 494 A.2d 1014 (1985); *In re Greenfield,* 76 N.Y.2d 293, 557 N.E.2d 1177, 558 N.Y.S.2d 881 (1990); *Sommerville,* 178 W.Va. at 697, 364 S.E.2d at 23.

As the Supreme Court of New Jersey recognized in *Alvino,* "[n]ot every failure of a judge to conform to the standards of the [New Jersey Judicial] Code [of Ethics] amounts to judicial misconduct or merits formal discipline." 494 A.2d at 1016. The *Alvino* court concluded that a judge's failure to complete required weekly reports over a period of eighteen years did not constitute judicial misconduct or warrant judicial discipline where "there was no willfulness in any evil sense at all." *Id.* at 1018.

Similarly, the Court of Appeals of New York held that a judge's delay on eight cases, ranging between seven months and nine years, did not constitute misconduct warranting disciplinary sanctions. The Court reasoned that delays in disposing of pending matters generally can and should be resolved through the administrative process and that more severe sanctions for violations of ethical standards "should only be deemed appropriate and necessary when the Judge has defied administrative directives or has attempted to subvert the system by, for instance, falsifying, concealing or persistently refusing to file records indicating delays." *Greenfield,* 558 N.Y. S.2d at 883–84, 557 N.E.2d at 1179–80.

In the present case, only approximately three and one-half months elapsed between the date the case was ripe for decision and the filing of the decision. Family law master King testified that he had experienced difficulty in determining the precise amount of child support to be awarded. He further testified that he had a greater workload than usual due to the illness of a family law master in adjoining counties and his resultant coverage of her assignments. No allegations of excessive vacation or additional unrelated complaints were advanced. Based upon the evidence presented in this matter and our independent evaluation of that evidence, we hold that family law master King did not violate Canon 3 by delaying his decision for three and one-half months.

■ The final contention of the Judicial Investigation commission involves Mr. King's alleged misplacement of the tape-recorded transcript of the original hearing on this matter. The Commission argues that this alleged improper maintenance of tapes violates Canon 3B(1) requiring a judicial officer to discharge his administrative responsibilities in a competent manner and to assure the performance of the administrative responsibilities of court officials. Mr. King testified that normal policy dictated that he deposit the tapes with the Harrison County Circuit Clerk's office at the conclusion of the hearing. Pursuant to customary procedure, he left the tapes at the clerk's office. They were not located subsequent to that time. Any argument to the effect that Mr. King should bear the responsibility of monitoring the location of the tapes or guaranteeing their proper placement by court personnel is meritless. We therefore adopt the finding of the Judicial Hearing Board and concur in its opinion that the complainant failed to prove, by clear and convincing evidence, that family law master King misplaced the tapes of the original hearing.

## IV.

After having conducted an independent evaluation of the record and the recommendations of the Judicial Hearing Board, we find that the allegations of misrepresentations by Mr. King have been proven by clear and convincing evidence. We further hold that these misrepresentations constituted a violation of Canon 2A. Clear and convincing evidence has not been presented, however, to support a finding of violation of Canon 3A(1) and (5) or Canon 3B(1).

Although the Judicial Hearing Board has recommended that Mr. King be publicly censured for violation of Canon 2A, we believe that a simple reprimand would be sufficient in this instance. While Mr. King

did misrepresent the status of the opinion in question, we find that he did so without malicious intent or conscious desire to prejudice the rights of the parties. We also find that he represented the status of the opinion with the intention to complete the opinion in a timely fashion as promised. Further, this matter arose in Harrison County, a county to which Family Law Master Cornelia Reep was assigned. Mr. King was assisting Ms. Reep while she was unable to fulfill her duties and was consequently bearing a greater burden than his usual responsibilities in Braxton, Clay, Gilmer, and Webster counties.

Thus, we adopt the recommendation of the Judicial Hearing Board that the charges of violation of Canon 3A(1) and (5) and Canon 3B(1) be dismissed. For violation of Canon 2A, Mr. King is hereby reprimanded.

It is so ordered.