In re the Honorable L. Thomas ELLISTON, Respondent.

No. 72180.

Supreme Court of Missouri,
En Banc.

May 15, 1990.

Charles Merz, St. Louis, for informant.

Robert G. Russell, Sedalia, for respondent.

PER CURIAM.

The Commission on Retirement, Removal and Discipline ["the Commission"] filed a formal notice of hearing containing 39 counts and subcounts alleging violations of the Code of Judicial Conduct and of Mo. Const. art. V, § 24.3, committed by Judge L. Thomas Elliston of the Twenty–Ninth Judicial Circuit. Although he did not sit on this matter, Judge Elliston served as a member of the Commission at the time information of his alleged misconduct came to the Commission's attention. Following the formal hearing, the Commission filed its findings of fact and conclusions of law with this Court, determining that Judge Elliston violated Canons 1, 2A, 2B, 3A(3), and 3A(4) of the Code of Judicial Conduct (Rule 2) and Mo. Const. art. V, § 24.3. Specifically, the Commission found Judge Elliston guilty on 23 of the 39 counts and not guilty on 16. We have no authority to consider any charge in which the Commission found Judge Elliston not guilty. *In re Buford*, 577 S.W.2d 809, 819 n. 2 (Mo. banc 1979); *In re Briggs*, 595 S.W.2d 270 (Mo. banc 1980).

We have completed our independent review, *In re Buford*, 577 S.W.2d at 813, concluded that the bulk of the charges have been established and find violations of Canons 1, 2A, 2B, 3A(3) and 3A(4) and Mo. Const. art. V, § 24.3. Respondent Judge Elliston is suspended from judicial office without pay for a period of fifteen days.

Judge Elliston's able counsel raises several procedural issues initially. In considering these procedural points, it must be remembered that the Commission is a constitutional body, existing pursuant to Mo. Const. art. V, § 24. The basic procedures are established by the Constitution. Our rule-making authority is limited by the Constitution to prescribing rules for the administration of § 24.6 of the article, relating to "notice and hearing." This Court has no authority to interfere with the constitutional functions of the Commission.

■ Judge Elliston complains of the alleged commingling of the functions of investigation, prosecution and adjudication, characterizing the Commission as acting as "prosecutor, judge and jury." Judge Elliston's claim is essentially that the Commission's procedures deny him due process. The proceedings before the Commission are civil, not criminal, and the constitutional standards are those that apply to civil actions generally.

The Commission is initially obliged to investigate information about judicial misconduct. It then determines whether the investigation shows probable cause for believing that there has been "misconduct," or any other offense proscribed by the Constitution. The Commission proceeds with a formal hearing, after notice, to determine whether discipline should be recommended. The respondent judge may appear in person and through counsel, may cross-examine, summon witnesses, and introduce evidence. The Commission may act only on the basis of the evidence introduced at the formal hearing. The procedure is not essentially different from that approved in *Ross v. Robb*, 662 S.W.2d 257 (Mo. banc 1983). *See also Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Rose v. State Board for Healing Arts*, 397 S.W.2d 570, 574 (Mo. banc 1965). Judge Elliston's due process claim has been made and denied in numerous prior cases. See particularly *In re Duncan*, 541 S.W.2d 564, 568 (Mo. banc 1976). It is denied here, as well. The Commission's procedures provide due process of law as required by U.S. Const. amend. V & XIV and Mo. Const. art. I, § 10.

■ Judge Elliston complains that the Commission's counsel had *ex parte* communications with the Commission members following the filing of formal charges. The Constitution makes no provision for a "prosecutor," and makes the Commission responsible for the presentation of the charges after notice of hearing has been served on the respondent. So far as the Constitution is concerned, the members of the Commission or some one of their number could assume the responsibility for marshalling the evidence and preparing the witnesses in order to conduct an orderly hearing. It is entirely in order for the Commission to have the assistance of a lawyer in discharging this responsibility. The lawyer so appointed functions solely at the direction of the Commission, doing the things that Commission members would otherwise be required to do. There is no prohibition of his communicating with the Commission in the discharge of his duties. There is, furthermore, absolutely nothing to indicate that the Commission's counsel conveyed any information to the members which was not brought out at the hearing, or that the findings were based on anything other than evidence presented at the hearing and recorded in the transcript.

■ Judge Elliston's complaint about the questions asked by the members of the Commission during the course of the hearing is without merit. In a jury trial there is fear that jurors might not understand the reasons for the questions asked by the judge, or might believe that the court had indicated an opinion on the merits of the case or the credibility of the witness being questioned. These problems are not present when there is no jury. There is no rule which inhibits members of a tribunal who are conducting an evidentiary hearing from asking questions about matters that concern them. As the Commission's brief points out, the constitutional scheme appears to contemplate a Commission whose members develop the evidence at a formal hearing. We have examined the portions of the transcript containing questions by the Commissioners of which Judge Elliston complains, and find that these questions were properly asked in the search for information and without any indication of bias or prejudice.

■ We likewise reject Judge Elliston's Point IV, in which he complains that the Commission's counsel made Judge Elliston's confidential response to its initial inquiry available to other witnesses. As has been said, the Commission is responsible for developing the evidence and may make use of its counsel for this purpose. It is proper to ask witnesses about the

respondent's version of the evidence, not only to prepare them for cross-examination but also to determine whether apparently conflicting versions of the facts may be reconciled.

■ Judge Elliston complains about being forced to give testimony against himself, in violation of the Fifth Amendment and art. I, § 19, of the Missouri Constitution. This argument injects a phantom issue. The respondent may make any claim of self-incrimination he thinks necessary and cannot be required to divulge information as to which he claims the privilege. Unless this claim is made, the respondent is obliged to cooperate with the Commission and to present such information as it requests, just as a party witness is obliged to do in a civil case. *In re Corning*, 538 S.W.2d 46 (Mo. banc 1976). We say that the issue is phantom because we perceive nothing in the record which could possibly be construed as a criminal violation.

■ The Commission may not impose discipline. Only this Court may do that. As we have said, the Commission's recommendations are subject to our independent review. *In re Buford*, 577 S.W.2d at 813. This is the ultimate guarantee of due process.

It is argued that the Commission lacked jurisdiction because no complaint was made to it before it undertook investigation. Judge Elliston sought to discover the complaints that were made, and concludes from the Commission's refusal of disclosure that there were none.

■ There is no basis for arguing, as does Judge Elliston, that the Commission's jurisdiction depends on the filing of a complaint in any particular form. Judge Elliston points to our Rule 12.07(a), which refers to "receipt of a complaint," whereas prior Rule 12.08(a), amended and renumbered December 1, 1987, referred to "receipt of information." The difference is not legally significant, because we have no authority to circumscribe the constitutional jurisdiction of the Commission by rule. Nor should the constitutional provisions be read as limiting the Commission's authority to take action against any possible judicial misconduct that might come to its attention.

■ The Commission, furthermore, is not obliged to disclose the names of persons who present complaints. A requirement of disclosure could seriously impede the effectuation of judicial discipline, because people hesitate to make publicized complaints about sitting judges. The respondent is entitled to know about the persons who will be called upon to give testimony in a formal hearing, and the Commission may recommend disciplinary action only on the basis of evidence developed at a hearing. Neither the governing rules nor the elements of due process require that the respondent know the names of the persons whose complaints trigger the initial investigation, however.

■ Judge Elliston filed a formal motion to compel the other members of the Commission to recuse and to procure substitutes to hear the proceedings against him. We are not persuaded that any reason requiring recusal was shown. Article V, § 24, of the Missouri Constitution gives the Commission explicit jurisdiction over claims of misconduct of its members. It must be assumed that the framers intended this jurisdiction to be exercised by the regular members of the Commission unless special circumstances call for recusal of one or more in a particular case. There is absolutely nothing to indicate that the remaining members may not function if a member is cited as respondent.

■ Judge Elliston goes on to argue that the remaining commissioners had a personal interest in the proceedings against him, and so were compelled to recuse. The allegations are insufficient on their face to demonstrate the asserted personal interest. Two of the suggestions have to do with the filing of charges which are said to be "stale." There is no statute of limitations on charges of judicial misconduct, and it is quite possible that charges which on their face seem minor may gain force if later

information suggests a pattern of conduct.[1]

It is also suggested that "prejudice" or "personal interest" appears because the Commission sought to disqualify Judge Elliston from sitting as a member of the Commission during the pendency of the charges against him. This reaction to an unprecedented and anomalous situation does not bespeak either prejudice or personal interest. Nor is prejudice shown by the circumstance that the Commission filed an additional charge against the respondent on account of disclosures of assertedly confidential information about other proceedings, made in this Court in the course of motions relating to the present proceedings.

We also reject the intimation that recusal is required because of prior disagreements between the respondent and other members over the handling of the Commission's other business. Such disagreements are not unusual in a collegial body and do not demonstrate personal animus. There is absolutely nothing to indicate that any commissioner would stand to gain personally if the charges against Judge Elliston were upheld. Nor is there any indication that any Commissioner did anything but his duty as he saw it.[2]

■■■ Unless a disqualifying interest is manifest, the decision about whether to recuse or to participate is one which the challenged officer must make personally. The regular members of a specially constituted tribunal have a duty to participate in its business, absent unusual circumstances. A member should recuse only if there is a substantial appearance of prejudice, or if the member doubts his ability to function impartially. We sense absolutely no compulsion for recusal in the case at hand.

■■■ Judge Elliston also argues that the entire case is infirm because the Commission did not prepare a transcript of all of the proceedings at the investigatory stage and did not furnish this transcript to the respondent prior to the formal hearing. Violation of Rules 12.12 and 12.14 is suggested.

The specific complaints are as follows: (a) The Commission's counsel interviewed witnesses and made notes, but did not condense these notes into formal statements which were furnished to the respondent; (b) in some of the materials furnished to the respondent the names of "informants" were blacked out; and (c) the respondent is entitled to discovery of any prior complaints against him to determine whether there is any res judicata effect in the Commission's failure to proceed with these.[3]

We reject these contentions. There is no requirement of written memoranda or formal transcription of all investigatory interviews. Nor must the Commission disclose the names of its informants unless it intends to present their testimony at a formal hearing.

There is absolutely nothing to show that Judge Elliston was not furnished the name of any person who possessed information favorable to him, that he was prejudiced by the failure to disclose adverse information, that the Commission did not furnish him any formal statements of witnesses it possessed, or that he was in any way surprised by anything brought out at the hearing. When complaints about discovery are made, tribunals regularly grant continuances or allow recess for private interviews or the taking of depositions. Nothing along these lines was requested.

■■■ The argument that a decision of the Commission not to proceed with a complaint is *res judicata* has no merit, at least when there has been no formal hearing following notice. The Commission is not

---

1. A sitting judge may be disciplined on account of misconduct during an expired term. *In re Briggs,* 595 S.W.2d 270 (Mo. banc 1980).

2. The entire procedure presented neither a light nor pleasant burden for the Commission to assume. Its members are to be commended for performing their duties judiciously and with dispatch, particularly when the misconduct charges were against one of its members.

3. This assertion seems strange, because the Commission notifies the judge who is the subject of a complaint as a part of its investigation unless it concludes that the complaint does not merit further inquiry.

obliged to proceed to the hearing stage on all matters brought before it.

The Code of Judicial Conduct establishes standards against which judicial activity is measured. The Commission found Judge Elliston's conduct to violate Canons 1, 2A, 2B, 3A(3), and 3A(4). These canons provide in pertinent part as follows:

## CANON 1

### A Judge Should Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

## CANON 2

### A Judge Should Avoid Impropriety and the Appearance of Impropriety in His Official Activity

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. . . .

## CANON 3

### A Judge Should Perform the Duties of His Office Impartially and Diligently

A. Adjudicative Responsibilities.

\* \* \* \* \* \*

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

Violations of these canons, if established, constitute "misconduct" or "oppression in office" within the sense of Mo. Const. art. V, § 24.3. *In re Fullwood*, 518 S.W.2d 22 (Mo. banc 1975); *In re Kohn*, 568 S.W.2d 255 (Mo. banc 1978). A disciplinary action against a judge is not a criminal action. Therefore, charges of misconduct or oppression in office need be proved by a preponderance of the evidence. A judge is not subject to discipline, however, for an appropriate exercise of judicial discretion. *In re Voorhees*, 739 S.W.2d 178 (Mo. banc 1987).

Where, as here, the charges involved speak for the most part to a judge's manner rather than his method of procedure, reputation evidence is admissible and does not violate the hearsay rule. *See State ex inf. Danforth v. Orton*, 465 S.W.2d 618 (Mo. banc 1971), *cert. denied*, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 92 (1971) (evidence of a sheriff's reputation for enforcing liquor and gambling laws is permissible in an action for ouster). In this case, there were sharp differences in the testimony of several witnesses called by Judge Elliston and the Commission as to Judge Elliston's reputation for showing courtesy. In our independent review, we do not give the reputation testimony great weight. Instead, the conclusions reached by the Court are based on the evidence about particular instances charged in which witnesses were personally involved, and not Judge Elliston's general reputation.

A final preliminary matter must be addressed. Judge Elliston offered the testimony of numerous judges and former judges as to customary judicial practice in this state. The Commission concluded that it was familiar with customary judicial practice and excluded Judge Elliston's offered testimony. The record contains the offered testimony and we have considered it. Because the offered testimony does not deal in depth with the specific conduct complained of, it is of little value. In matters such as this, the ultimate fact-finding responsibility lies with this Court. It is appropriate to give weight to the Commission's determinations of credibility where there are stark conflicts in the evidence. We reiterate, however, that discipline may be imposed only by this Court after independent review. In this case, the result reached does not depend to a great extent on matters of credibility. The essential facts are not seriously disputed, even though the Commission and Judge Elliston place substantially different emphasis on the interpretation to be given the facts.

We turn now to our consideration and independent review of the charges on which the Commission found guilt. Although the Commission found guilt in twenty-three counts, this Court finds violations of the Code of Judicial Conduct and Mo. Const. art. V, § 24.3 only in these counts described following.

### Count III

David Robards, counsel for the defendant in a criminal matter subpoenaed Judge Elliston and his wife to appear as witnesses for the defense. The defendant had been charged with failure to return to confinement. The case was set before Judge M. Keithley Williams, an Associate Circuit Judge in Judge Elliston's circuit. Judge Elliston approached Judge Williams out of court and without notice to attorney Robards and asserted that Judge Williams lacked jurisdiction over the case and that she should quash the subpoenas. Judge Elliston indicated that if Judge Williams did not quash the subpoenas, he would seek a writ from the court of appeals. Judge Elliston also informed Judge Williams that a federal court had assessed attorney's fees against an associate circuit judge in southeast Missouri for acting in excess of his jurisdiction.

Judge Elliston's actions showed a purpose and intent to influence Judge Williams' official action in regard to the subpoenas. He, of course, could have represented himself in proceedings in her court, but should have done this only formally, and with notice to the lawyer who procured the subpoena. In addition, Judge Elliston made a menacing telephone call to the office of attorney Robards, speaking with his secretary, and demanding that the subpoenas be withdrawn. These acts were discourteous, oppressive and constitute misconduct in office.

### Count VII(e)

Rule 52.02(d) provides in pertinent part that the order of appointment of a next friend "shall be filed in the office of the clerk of the court where the civil action is proposed to be brought before any proceedings shall be had in the cause." Attorney Ed Hershewe filed a wrongful death petition on behalf of a minor child who had lost his mother, father and sister. At the time of the filing of the petition for wrongful death, Hershewe also filed an application for appointment of a next friend. Several weeks after the filing of the petition and the application for the appointment of the next friend, Hershewe's co-counsel, Glenn Gulick, appeared before the respondent on substantive motions and thereafter requested that Judge Elliston sustain the motion for the appointment of the next friend. Judge Elliston refused to do so, and later that afternoon called Hershewe and began yelling at him, describing Hershewe's work as, among other things, sloppy. Hershewe attempted to explain to Judge Elliston that if the judge forced Hershewe to refile the petition, the additional filing fee would be charged to the child. Judge Elliston refused to approve the application for the appointment of the next friend without a refiling. Rule 52.02(m) provides that "failure to appoint a next friend or guardian *ad litem* for a minor ... shall not invalidate

the proceedings if the court finds that the interests of the minor ... were adequately protected." Judge Elliston exhibited discourtesy toward Hershewe because he had not followed the procedures that Judge Elliston deemed appropriate regarding the appointment of the next friend.

### Count VII(g)

Judge Elliston heard a portion of a dissolution of marriage proceeding on October 13, 1983. The case was reset October 31, 1983, for trial. Immediately prior to the trial, the attorneys for the parties announced their belief that they could settle the matter and requested time to draw up settlement documents. Respondent stated: "Absolutely not. You requested a trial setting. This case is going to be tried." After approximately 40 minutes of testimony, Judge Elliston was called out of the courtroom. In his absence, the attorneys completed their negotiations, settled the case, and subsequently presented evidence of their agreement. Judge Elliston entered an order the same day. We do not question Judge Elliston's power to refuse a request for an opportunity to confer toward settlement in a dissolution of marriage action. Nevertheless, the manner in which Judge Elliston handled his refusal of the request was discourteous.

### Count VII(i)

■ Attorney Phillip Glades filed an application for change of judge which the respondent refused to grant. Glades procured an extraordinary writ from the court of appeals ordering the change of judge. Judge Elliston called Glades' secretary saying: "Tell Glades that I'll enter my change of judge but that it [the case] will be heard on the 29th if I have to bring in another judge." We do not find misconduct in Judge Elliston's initial denial of the application for change of judge. Judicial error alone is not a sufficient basis upon which to found violations of the Code of Judicial Conduct or art. V, § 24.3. *In re Voorhees*, 739 S.W.2d 178 (Mo. banc 1987). Nevertheless, Judge Elliston's threat to continue action in the case following his disqualification by the court of appeals and the man-

ner in which he informed Glades of his intentions was discourteous, abrasive and misconduct in office.

### Count VII(k)

In a criminal matter, defense counsel moved to continue the case based upon the prosecutor's failure to provide certain elements of discovery, including a multi-paged medical report to the defense. Judge Elliston announced that he did not believe that a person of the defense counsel's scientific background should need a continuation to study a medical report that could be digested in a short period of time. Judge Elliston now claims that the remark was on ill-advised attempt at humor. The attorney did not share that view, indicating that even if it had been intended as humorous, it embarrassed him before his client. Again, discourtesy is the hallmark of the exchange at issue in this count.

### Count VII(m)

In a matter involving a motion to modify child support, attorney Walter Williams believed that Judge Elliston was assigned the case. He filed an application for change of judge but subsequently discovered that the case was assigned to Judge Williams. Mr. Williams asked Judge Williams to ignore the change of judge application. Opposing counsel subsequently disqualified Judge Williams and Judge Elliston received the case under local rules. In order to secure a prompt hearing, Mr. Williams determined not to seek to disqualify Judge Elliston. After several attempts, the parties agreed to a trial date, subpoenaed witnesses, and on the day of trial announced ready for trial. The parties took off work to be available for the hearing. On the morning of trial, Judge Elliston discovered the old change of judge request in the file and sustained it without any effort to contact Mr. Williams. The Commission concluded, and we find, that Judge Elliston knew from the various correspondence between the attorneys and the court that Mr. Williams no longer wished to disqualify him. Further, the entry of the disqualification violated Judge Elliston's own policy, founded on

*State v. Bowling*, 734 S.W.2d 565, 569 (Mo. App.1987), holding that when application for a change of judge is unaccompanied by notice of the time when it will be presented to the judge, the judge does not err in denying the application. Judge Elliston's actions show a lack of courtesy to litigants, witnesses and attorneys.

### Count VII(*o*)

In a criminal matter, attorney David Robards was appointed to represent the defendants. Robards entered his appearance on August 5, 1988, and requested a continuance from the trial setting of August 19, 1988. Without providing counsel an opportunity for hearing, Judge Elliston denied the continuance, despite Robards' full trial schedule in the days between the request for the continuance and the trial setting. In addition, on August 18, 1988, Robards delivered a letter to Judge Elliston's office requesting that the trial start half an hour earlier then normal and seeking leave of court to allow an errand runner for Robards to tape record parts of the trial for use by the defense. Judge Elliston reviewed the letter and granted the request for the early start. On the morning of trial, Robards attempted to make a record as to the effect of the denial of the motion for continuance on his ability to prepare for the case. Judge Elliston abruptly refused. When the bailiff noticed the presence of the tape recorder in the courtroom, Judge Elliston threatened the errand runner with contempt if he used the tape recorder in the courtroom despite being informed of Robards' intention in the letter of August 18. Further, Judge Elliston refused to allow Robards to approach the bench to offer an objection regarding the defendant's use of drugs. Robards wished to make the objection out of the hearing of the jury because of the prejudicial nature of the proffered evidence. Judge Elliston's tone throughout the exchanges was both abrasive and discourteous.

### Count VII(p)

Judge Elliston set a criminal matter for trial on Monday, October 24, 1988. Defense counsel called Judge Elliston's secretary the previous Friday to advise that a guilty plea would be entered and offered to present the defendant for the plea that afternoon or on Saturday. On Monday, the plea having not been entered, Judge Elliston declined to accept the plea and insisted that the trial proceed. Judge Elliston explained that he had a policy of not accepting guilty pleas in cases set for trial on a Monday unless notice of the purpose of entering a plea had been given the preceding Friday. This policy is a strange one and does not conform to the usual practice. It bears the potential to require a trial where neither the state nor the defendant wants one. Irrespective of the wisdom of the policy, however, Judge Elliston was again discourteous to counsel and the defendant.

### Count VII(r)

Respondent denied an attorney experiencing difficulties speaking the opportunity to have a glass of water to assist him in completing his closing argument. Judge Elliston contends that his general rule prohibits any liquid in the courtroom. Where the presence of water in the courtroom is necessary for the attorney to complete his work because of a throat condition, the inflexible application of the rule has the potential of denying a litigant the most effective use of his chosen attorney's talents. Under these circumstances, inflexible enforcement of the rule was oppressive and discourteous.

### Count VII(s)

In a civil matter, Judge Elliston dictated a four-paged pretrial order and informed the attorneys that the order would be typed by the court reporter and filed with the case. He also informed the attorneys that if they wished to have a copy of the order they should inform the court reporter and would be required to pay a nominal fee for that copy. He expressly forbad the attorneys from obtaining the order from the court file. At the hearing before the Commission, Judge Elliston acknowledged that the procedure was wrong, had been changed, and that "it won't happen again."

## Count VII(u)

On August 28, 1983, a lawyer with offices in Carthage, Missouri, approximately 18 miles from Joplin, called Judge Elliston's secretary to advise that he would be entering his appearance in a domestic case set for hearing in Joplin the next day and needed a continuance. The record does not indicate that the secretary gave the attorney any assurance that the request would be granted, but the record does show that Judge Elliston was advised of the conversation. The lawyer did not appear in Judge Elliston's court the following day, nor was his client present. Judge Elliston sent a deputy sheriff to arrest the client and bring her to court. The deputy allowed the client to call her lawyer, who persuaded the deputy to allow him (the lawyer) to bring the client into court instead of arresting her in the presence of her employer and fellow employees. Judge Elliston subsequently made it known to the sheriff's office that he expected the deputies to carry out his orders without deviation and that attorneys should not talk them out of doing as he ordered.

From the record, it is evident that Judge Elliston knew that the lawyer had sought a continuance and that he assumed that it had been granted. It is true that the lawyer was unjustified in assuming that the continuance had been granted. Nevertheless, Judge Elliston was guilty of an unjustified overreaction in ordering the arrest, the only possible result of which was the humiliation of the client and the embarrassment of the lawyer.

## Count VII(v)

An attorney seeking a temporary restraining order asked Judge Elliston's secretary about his availability to hear the matter. The secretary replied that Judge Elliston would be involved in a jury trial and that the attorney would simply have to show up and take his chances as to when he could make his presentation. The attorney located another judge who was available for a hearing without delay. In order to get the matter before that judge, the attorney filed an application for a change of judge with Judge Elliston. Judge Elliston's jury trial had unexpectedly not gone forward. When the attorney presented the application for a change of judge, Judge Elliston was again discourteous, accusing the attorney of judge shopping because he had contacted other judges to determine their availability to hear the temporary restraining order.

## Count VII(x)

In a juvenile matter, an attorney appeared before Judge Elliston and offered evidence in support of a juvenile officer's report. Judge Elliston informed the attorney that he was wasting the court's time by putting on evidence in support of the recommendation. Judge Elliston's tone was "rude and demeaning." In another similar matter, the same attorney asked Judge Elliston whether he wished to hear evidence in support of the juvenile officer's report. Judge Elliston replied, "[i]f you think I'm going to make a commitment to you before I've heard all of the evidence, you're sadly mistaken!" In both cases, Judge Elliston's remarks were made in the presence of the attorney's clients and other juvenile court personnel and were discourteous.

## Count VII(y)

An attorney who had cross-examined a plaintiff's witness sought leave of Judge Elliston to permit his co-counsel to cross examine the witness, following redirect. Judge Elliston asked, "[I]s there any special reason for it? Is [the initial attorney] incompetent to do it, since he started?" The comments, made in open court, were again oppressive and discourteous.

## Counts VII(aa) and VII(bb)

The record in this matter contains evidence of several unpleasant exchanges between Judge Elliston and other judges of the Twenty–Ninth Judicial Circuit, both orally and in writing. There is no need to describe them in detail. These exchanges regularly reflect discourtesy on the part of Judge Elliston in responding to and dealing with his colleagues.

### Counts VIII(a) and VIII(c)

A court employee originally supported Judge Elliston's opponent for election as circuit judge when Judge Elliston was initially elected to judicial office. Judge Elliston subsequently became dissatisfied with the employee's work, frequently criticized her in open court, did not discuss her work performance with her privately and eventually terminated her when she came under his supervision. The individual was later hired by another judge and came into Judge Elliston's court as a witness, having been subpoenaed by the defense in a criminal case. When she testified, and had difficulty remembering events, Judge Elliston "held a recess and out of the hearing of the jury told the assistant prosecutor to 'find that file, and let Betty refresh her memory. Once again, she's proven her incompetence.'" *State v. Owens*, 759 S.W.2d 73, 76 (Mo.App.1988). When the file did not assist her in refreshing her recollection, and the assistant prosecutor told Judge Elliston that there was nothing further he could ask her, Judge Elliston responded, "[w]e're going to put her on the stand, and she's going to get to prove her incompetency in front of everybody if this doesn't refresh her memory…" *Id.* The court of appeals concluded that Judge Elliston apparently "had a lack of respect for the witness…." *Id.* In mitigation, Judge Elliston has acknowledged the criticism of the court of appeals and assured the presiding judge of the court of appeals that the incident would not be repeated.

These charges, which are substantiated by a preponderance of the evidence, show a pattern of discourteous, abrasive and abusive conduct on the part of Judge Elliston toward attorneys, litigants, witnesses and his colleagues on the bench. A judge who is regularly discourteous and abusive to those who come before him has stepped beyond the bounds of appropriate judicial conduct, imbrued the office of judge with his arrogance and disregard for others, and

most importantly, has placed at risk the judiciary's sole legitimate claim to authority—its impartial and dispassionate search for justice. Considered individually, the charges proven against Judge Elliston constitute violations of the Code of Judicial Conduct, specifically Canons 1, 2A, 2B, 3A, 3A(3) and/or 3A(4). As we have previously said, such discourteous and abusive conduct also constitutes the misconduct and oppression in office condemned by art. V, § 24.3, of the Constitution.

This pattern of abusive and discourteous conduct spans the length of Judge Elliston's judicial career.

This is not to say that all judges are free of isolated moments of ill-temper and pompous disregard for others. Judges do not leave behind the concerns and difficulties of ordinary life when they undertake judicial office. A pattern and practice of abusive and discourteous behavior, however, betrays a mindset which this Court cannot ignore and for which a serious sanction is appropriate.

That sixteen attorneys who practice in Jasper County testified as to Judge Elliston's abusive behavior is a further indication of the seriousness of Judge Elliston's misconduct.[4] These attorneys testified not as to Judge Elliston's reputation generally but as to their experience with him specifically. Evidence of Judge Elliston's good conduct, to which others testified, does not disprove his acts of oppression, abuse and misconduct. It only shows that his conduct is not universally contrary to the Code of Judicial Conduct.

Those who felt his wrath said that Judge Elliston "attempted to humiliate me in front of my clients;" was "discourteous;" has a "short temper;" ["seemed … early on in a motion or in a case to adopt a side and then further that side by being rude to the attorneys on the side he didn't like;"] was "impulsive" and "very emotional;" was "discourteous, disrespectful to persons

---

**4.** We are aware that offering testimony against a sitting judge carries risk. All of these attorneys make their living practicing law in the Circuit Court of Jasper County. All hope to continue to do so. We are confident that Judge Elliston will not undertake any course of vengeance against these attorneys, being cognizant that such conduct will, no doubt, find its way to the Commission for consideration.

who appear before him;" was "discourteous, suspicious, vindictive, ... lacking in common courtesy and decency to litigants and lawyers;" was "high-handed and abusive to lawyers and witnesses and judges and parties;" caused those who appeared before him "a feeling of anxiety plus a concern for whether his attitude on that particular day may affect the outcome of your case and may affect the welfare of the client." These are harsh words spoken by persons who felt their force. The transcript gives support to these assertions.

Nor can it be said that this pattern and practice is but an accumulation of isolated events, which, when taken together, show no more than that Judge Elliston is ill-mannered. Were we permitted to view these incidents that superficially, and in isolation, a public reprimand might be a sufficient sanction. However, a careful review of this case paints a darker picture. Lurking just below the surface is the portrait of a judge whose desire to even the score with those who confront him personally or question his legal judgment clouds his judgment and jeopardizes the ability of litigants who appear before him to receive full and impartial justice.

At this juncture we consider again several of the counts lodged against Judge Elliston. Instead of considering the counts as individual, unrelated incidents, however, the evidence is now viewed as a whole. Seen in this way, some of the facts show a troubling cause and effect relationship between Judge Elliston's abusive and discourteous treatment of some individuals and a prior incident in which the individual confronted Judge Elliston personally or questioned his professional judgment.

## DAVID ROBARDS

The State charged Jerry Loughlin with failure to return to confinement, a misdemeanor. Loughlin's attorney, David Robards, subpoenaed Judge Elliston and his wife as witnesses to show Loughlin's efforts to surrender himself to custody.

July 20, 1988 The day before Loughlin's hearing, Elliston took the court's file of the case and visited Judge M. Keithly Williams to explain to Judge Williams that she did not have jurisdiction over the case. Elliston informed Judge Williams that if she did not quash the subpoenas, he would seek a writ in the court of appeals. Elliston "reminded" Judge Williams of a judgment entered against an associate circuit judge in southeast Missouri by a federal court for attorney's fees after that judge placed a lady in jail when he had no jurisdiction to act. Promising to call with a citation for the case, Elliston left.

Elliston called Judge Williams' clerk and reiterated his commitment to seek a writ if the subpoenas were not quashed. Elliston told the clerk that Judge Williams had until 2:00 p.m. that day to quash the subpoenas. These events occurred in the absence of the attorneys representing the parties in the case.

Following a discussion with the attorneys, Judge Williams decided to proceed with the hearing the next day; the subpoenas were not quashed. At 4:00 p.m., Elliston called Judge Williams, asked about her availability to hear a motion for a protective order, and again announced his commitment to seeking a writ if Judge Williams failed to quash the subpoenas. Elliston also called Robards' office, telling Robards' secretary, "[b]y God, you tell Robards if he doesn't get those subpoenas pulled I will fight him on it all the way to the Supreme Court."

July 21, 1988 The prosecutor lowered his recommendation of punishment in *State v. Loughlin.* Loughlin pleaded guilty on the day of trial. Judge Elliston and his wife were not required to testify.

July 23, 1988 Attorney Robards was appointed to represent the defendant in *State v. Harbin,* a case involving an interracial sexual assault, assigned to Judge Elliston.

July 25, 1988 Robards received the appointment.

Aug. 5, 1988 Robards entered his appearance on behalf of the defendant and filed several motions, including a motion for a continuance. The latter motion sought a continuance from the August 19, 1988, trial date because Robards had a trial scheduled for August 10, 1988, because he was required as a witness in a post-conviction review proceeding on August 17, 1988, and because further investigation and discovery were needed before he could be ready for trial.

Aug. 10, 1988 Without a hearing, Elliston denied the continuance and confirmed the trial date of August 19, 1988, despite the fact that the defense rested on alibi and the defendant had subpoenaed forty-four witnesses.

Aug. 19, 1988 The trial began. Robards attempted to make a record about the need for more preparation before trial and the effect of the denial of the continuance. Elliston refused to allow Robards to make the record, indicating that the motion for the continuance had been overruled.

Prior to trial, Robards made an oral motion *in limine* seeking to prevent the State from raising evidence of cocaine usage during the alleged rape. Respondent overruled the motion. At the point in the trial at which Robards believed the State would ask the victim about cocaine use, Robards objected and asked leave to approach the bench. "If you have an objection, make it," Elliston said. When Robards indicated a need to make the objection outside the hearing of the jury, Elliston told him, "If you have an objection, go ahead and make it" and denied Robards leave to approach the bench. In order to avoid the jury hearing the substance of the objection and its relationship to cocaine usage, Robards was left to say only "[m]erely renew the oral motion in limine." On another occasion during the trial, Elliston again refused Robards permission to approach the bench.

Oct. 21, 1988 Attorney Robards represented the defendant in *State v. Strothers*, a case involving three counts of burglary. Robards apparently forgot about the trial and, when reminded less than one week before trial, set out to arrange a plea bargain. On October 21, 1988, the Friday before the Monday trial date, Strothers agreed to accept a plea bargain. Robards called Elliston's office to inform him of the agreement. Elliston denied Robards' request to allow his client to enter a plea, citing his (Elliston's) intent to ensure compliance with his rule that defendants plead by a given date before trial or go to trial.

Oct. 24, 1988 Prior to the beginning of the trial, Robards renewed his effort to enter a plea of guilty. Elliston denied the request, stating that he would not accept guilty pleas on the day of trial. Strothers was found guilty on Count One of the burglary charges. Thereafter, Elliston allowed Strothers to plead guilty on the other two counts. Elliston sentenced Strothers to seven years on Count I, two years more than the plea agreement anticipated.

Subsequently, in a post-conviction review proceeding, Robards admitted that he had been ineffective as Strothers' counsel in failing to convince his client to plead guilty in time to comply with Elliston's time requirements for accepting guilty pleas. Elliston found probable cause to believe that Robards was ineffective, but refused to grant a new trial.

Taken together, and considered as a chronological progression, the facts show Judge Elliston going out of his way to show his displeasure with David Robards for his attempt to subpoena Elliston and his wife as witnesses in the Loughlin matter. He stepped outside the bounds of appropriate legal procedure by his *ex parte* effort to badger Judge Williams into quashing the subpoenas. When that failed, he threatened "to fight" Robards all the way to the Supreme Court. And when that failed, he undertook a course of action, abusive in tone and vengeful in purpose, designed to even the score with Robards.

Unfortunately, Robards did not bear the brunt of Elliston's anger alone. Robards' client in *State v. Harbin* was denied a continuance without an opportunity for a hearing, despite the fact that the alibi defense Robards planned required forty-four witnesses and additional discovery, and Robards' legitimate responsibilities to other clients promised to take up major portions of time prior to the trial. Elliston denied Robards the opportunity to show the effects of the denied continuance on the record at trial. Elliston denied Robards' request for permission to offer an objection at the bench when the very substance of the objection bore the potential for prejudice to Robards' client. Elliston made his point with Robards. In the process, Elliston's pique jeopardized Robards' ability to represent his client fully and effectively.

In *State v. Strothers*, Robards' client lost the opportunity to plead guilty. Robards must bear his portion of the blame for that loss for failing to abide by Judge Elliston's rule. Nevertheless, Elliston's subsequent willingness to accept Strothers' guilty pleas and subsequent on-the-record finding of Robards' ineffectiveness as Strothers' counsel are additional evidence of Elliston's desire to even the score with Robards, to Strothers' detriment.

Were this an isolated incident, Judge Elliston's claimed justification of strict adherence to the rules would serve a mitigating purpose. It is not an isolated incident, however.

### JUDGE HERBERT CASTEEL

Judge Elliston acted as the trial judge in *State v. Tillock*. Judge Casteel presided over the post-conviction review hearing in *Tillock v. State* pursuant to Rule 27.26. Judge Casteel set aside Tillock's guilty plea, finding that Judge Elliston had not followed Tillock's understanding of the plea agreement. Judge Casteel found that Judge Elliston violated his duty to advise Tillock that he had a right to withdraw his guilty plea. The court of appeals affirmed. *Tillock v. State*, 711 S.W.2d 203 (Mo.App. 1986).

Following Judge Casteel's decision in *Tillock*, Judge Elliston presided over post-conviction review proceedings in *Tygart v. State*. In the initial trial, *State v. Tygart*, Judge Casteel had presided. Elliston set aside Tygart's sentence, but not his plea of guilty and returned the case to Judge Casteel for further proceedings.

In *Tygart v. State*, 752 S.W.2d 362 (Mo. App.1988), the court of appeals found Judge Elliston's procedure erroneous and his decision based on statements of Judge Casteel taken out of context. The court of appeals wrote, "There is no evidence to support [Judge Elliston's] finding and the same is reversed." *Tygart*, 752 S.W.2d at 371.

Subsequently, Judge Casteel, perceiving an intent on Judge Elliston's part to punish him for *Tillock v. State*, asked the presiding judge to remove Judge Elliston from consideration of post-conviction remedy hearings concerning criminal trials over which Judge Casteel presided.

### PHILLIP GLADES

*Deevers v. Barnum* found its way to Judge Casteel's dismissal docket. All cases not dismissed were set for trial July 29, 1985. Michael Talley, an attorney representing one of the parties in *Deevers*, sought a change of judge to avoid the July 29 trial date. Judge Casteel granted the change of judge. Judge Elliston received the case.

Because of prior experiences with Judge Elliston, attorney Phillip Glades had adopted a policy of seeking a change of judge whenever Judge Elliston was assigned one of his cases. Within the time allowed by the rules, Glades, who represented another party in *Deevers*, filed a motion for a change of judge. Judge Elliston summarily overruled the motion. Glades sought a writ from the Court of Appeals, Southern District, the purpose of which was to require Judge Elliston to remove himself from the case. The court of appeals issued the writ.

Upon learning of the writ, Judge Elliston phoned Glades' office with a message. "Tell Glades that I'll enter my change of

judge," Elliston said to Glades' paralegal, "but that it [the case] will be heard on the 29th if I have to bring in another judge." Again, Glades' client ultimately bore both the additional expense of obtaining the writ and the brunt of Judge Elliston's wrath.

The record leaves no question but that Judge Elliston is a man of substantial legal talent. He is able, diligent, and intelligent. Intelligence, ability and diligence are minimum qualifications expected of every judge. They do not serve to mitigate when the public's confidence in the impartiality, integrity and evenhandedness of the judicial branch is at stake. The facts of this case show a pattern of personal insult and invective and a pattern of petty vendetta. The latter is sufficient to cast doubt on Judge Elliston's impartiality in some of the cases before him. His pique at his colleagues and at the attorneys has unduly burdened the judicial system and jeopardized the ability of some attorneys to represent their clients to the fullest extent of their abilities. Far from inspiring litigants' confidence in the integrity and impartiality of the judicial system, his actions have undoubtedly led them to doubt that the system adheres to those ideals.

The Code of Judicial Conduct exists to protect the public and maintain public confidence in the judicial system. When a judge undertakes a willful pattern of discourtesy, abuse and vendetta against both his colleagues on the bench and those who appear before him as officers of the court, or persons whose legal needs require impartial resolution, he erodes the very foundation of the system. A public reprimand in the presence of such serious misconduct and oppression in office only serves to further that erosion. Because Judge Elliston is a person of significant legal ability, it is this Court's hope that he can correct his conduct, and it is our conviction that the people of Jasper County will be better served by a reformed Judge Elliston maintaining his place as a judicial officer rather than losing it. A suspension without pay for fifteen days is the appropriate sanction.

It is, therefore, ordered that respondent Judge L. Thomas Elliston be suspended from judicial office for a period of fifteen calendar days without pay. The period of suspension will commence on the first day of the month following the issuance of the mandate in this case. Costs are assessed against respondent.

All concur.