**In re Honorable Floyd R. BABER, Respondent.**

No. 74372.

Supreme Court of Missouri, En Banc.

Feb. 23, 1993.

Rehearing Denied March 23, 1993.

James M. Smith, Paul J. Passanante, Joan M. Tanner, St. Louis, for informant.

Robert G. Duncan, Kansas City, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

PRICE, Judge.

### I.

This case presents the Court with the unhappy task of deciding whether Floyd R. Baber, a twenty-one-year veteran associate circuit judge, should be removed from office. This proceeding was initiated when the Commission on Retirement, Removal and Discipline filed an eleven-count notice of hearing alleging that Judge Baber is not competent to handle the duties of the office of associate circuit judge. Judge Baber responded by "generally admit[ting] the charges and specifications." The notice was then amended to delete any reference to misconduct or to violations of the Code of Judicial Conduct.

After a formal hearing, Judge Baber explained that he intended to admit the factual allegations made by the commission but not the legal conclusion of his incompetency. This Court concluded that the record was ambiguous and incomplete, and directed the commission to either obtain an unambiguous response from respondent, or to conduct a second hearing and receive evidence that would provide a complete factual basis for its recommendation.

The commission's second amended notice reiterated the eleven charges and further alleged that the conduct charged constituted willful neglect as well as incompetency. Additional testimony was heard at a supplemental hearing, at which Judge Baber again denied being incompetent. Both the commission and respondent adduced reputation and opinion testimony at this hearing. In addition, the commission elicited expert testimony from a number of judges and attorneys, based upon their personal experiences with Judge Baber and upon their review of the charges and the responses thereto. The record also includes a report prepared by Retired Judge George C. Berry, who was retained by the commission to review the files listed in the notice.

The commission found that ten of the eleven charges had been proved by a preponderance of the evidence and that such conduct constituted incompetency and willful neglect of duty under article V, section 24.3, of the Missouri Constitution. However, the commission found credible Judge Baber's explanation that the incident described in Charge VII was an attempt at levity on his part, and concluded that the behavior charged therein did not constitute misconduct in any event. We do not con-

sider any charge of which the respondent was found not guilty. *In re Elliston*, 789 S.W.2d 469, 471 (Mo. banc 1990).

The commission concluded that respondent lacks the requisite ability, legal qualifications, and fitness to discharge the broad spectrum of duties and responsibilities inherent in the office of associate circuit judge, and that he consciously disregarded his duties as an associate circuit judge. The commission therefore recommended that he be removed from office.

## II.

 This Court is not required to adopt the recommendation of the commission in a judicial disciplinary proceeding. The ultimate responsibility to "remove, suspend, discipline or reprimand any judge of any court" is entrusted to this Court. *Mo. Const.*, art. V, § 24.3; *Matter of Buford*, 577 S.W.2d 809, 821 (Mo. banc 1979). Accordingly, we conduct an independent review of the evidence and the commission's fact findings, and where credibility is at issue, we give substantial consideration and due deference to the commission's ability to judge the credibility of witnesses appearing before it. *In re Voorhees*, 739 S.W.2d 178, 181 (Mo. banc 1987); *Buford*, 577 S.W.2d at 821. Because a disciplinary proceeding is civil rather than criminal in nature, the charges must be proved by a preponderance of the evidence. *Elliston*, 789 S.W.2d at 475.

 Disciplinary action against a judge is authorized "for the commission of a crime, or for misconduct, habitual drunkenness, willful neglect of duty, corruption in office, incompetency or any offense involving moral turpitude, or oppression in office." *Mo. Const.*, art. V, § 24.3. No discipline may be imposed absent a finding that the respondent has violated at least one of these constitutional standards. *Voorhees*, 739 S.W.2d at 180. An appropriate exercise of judicial discretion is not a violation of the standards and will not sub-

ject a judge to discipline. *Elliston*, 789 S.W.2d at 475; *Voorhees*, 739 S.W.2d at 180. In the case at bar, the sole grounds charged are incompetency and willful neglect of duty.

## III.

No purpose would be served by a detailed discussion of the charges in the second amended notice.[1] The allegations may be summarized as follows:

—Respondent's duties are limited by local court rule to traffic cases (excluding driving while intoxicated and driving while license revoked), small claims cases, and administrative and noncontested probate matters. Respondent is generally disqualified from contested probate matters, does not handle domestic or criminal cases, and is not assigned any jury trials.

—Respondent has failed to take action on matters of concern in court files, even after they have been brought to his attention by the clerks.

—Respondent has failed to follow the law in probate cases. For example, he has failed to require the filing of annual statements and reports by personal representatives and guardians, failed to require that proper notice be given to interested parties, and failed to hold hearings, all in contravention of the applicable probate statutes.

—Respondent has offered *ex parte* legal advice to litigants who have subsequently appeared before him on the same matter.

—Respondent has ordered defendants or wards of the court who did not exhibit symptoms of alcohol abuse to attend Alcoholics Anonymous meetings, even when the underlying offense was not alcohol-related.

—Respondent allowed a Michigan lawyer to represent an estate and approved an attorney's fee in the matter, although the lawyer had not complied with the requirements of Supreme Court Rule 9 regarding nonresident attorneys.

---

1. The notice specifically refers to instances of inappropriate conduct in the handling of thirty-five probate files and one small claims file. Thirty-two of the probate files were reviewed by Judge Berry, as listed in his report to the commission. These incidents, all of which have been admitted by respondent, provide adequate factual support for our conclusion herein.

—Respondent has made a number of rulings that are so far contrary to established law as to demonstrate a lack of understanding of the law, or an unwillingness to apply it.

Judge Baber has admitted the substance of these allegations, both by a general admission and by his responses to individual charges. The only question for us to consider, therefore, is whether these instances of judicial behavior indicate incompetency in the constitutional sense, and are severe and pervasive enough to necessitate his removal from the bench.

This Court's earlier decisions are not particularly helpful in this regard. No prior case has contemplated the imposition of discipline solely on the basis of incompetency. We have stated, however, that "[i]ntelligence, ability and diligence are minimum qualifications expected of every judge." *Elliston,* 789 S.W.2d at 484.

▪▪▪ A few other courts have had occasion to define incompetency as grounds for removal from office. The Supreme Court of Florida defined it as "any physical, moral, or intellectual quality, the lack of which incapacitates one to perform the duties of his office." *State ex rel. Hardie v. Coleman,* 155 So. 129, 133 (Fla.1934). The Supreme Court of Alabama found it is "mere incapacity for the performance of [official] duties." *State ex rel. Brickell v. Martin,* 180 Ala. 458, 61 So. 491, 494 (1913). The Supreme Court of Oregon held that a "general incompetent performance of judicial duties" was evidenced by "a lack of the knowledge and judgment necessary for the proper administration of justice in our

courts." *Matter of Field,* 281 Or. 623, 576 P.2d 348, 354 (banc 1978). In a similar vein, the dictionary defines incompetency as the "[l]ack of ability, knowledge, legal qualification, or fitness to discharge the required duty or professional obligation." *Black's Law Dictionary* 765 (6th ed. 1990). Accordingly, when incompetency is alleged the Court's task is to determine whether the conduct at issue establishes that the respondent lacks the requisite ability, knowledge, judgment, or diligence to consistently and capably discharge the duties of the office he or she holds.[2]

The record below includes the expert opinions of a substantial number of judges and attorneys who testified at the supplemental hearing. It is clear from the transcript that this was a difficult process for many of these witnesses, and we commend their willingness to put aside their personal discomfort in the service of our judicial system.

We gave substantial consideration to the testimony of five active and retired judges, four of whom are past or current colleagues of respondent. Retired Circuit Judge John M. Yeaman served with respondent for twenty-one years. Judge Yeaman testified that he assigned respondent to a limited range of cases because respondent was unable to handle more complex litigation, including jury trials.[3] In Judge Yeaman's opinion, this limitation shows that respondent is not competent to hold office, because an associate circuit judge is expected to perform the same duties as a circuit judge.[4] However, Judge Yeaman denied that respondent willfully neglected

---

**2.** It would be impractical to attempt to formulate a more concrete test of incompetency. After a review of prior case law, and the facts of this case, it has become evident that these cases are *sui generis* and must necessarily be decided in accordance with their particular facts and with due consideration to the gravity of the allegation and its potential consequences. Hopefully, such cases will never become so routine as to establish or require a more fixed rule of general applicability.

**3.** Judge Yeaman was asked if there was any reason why respondent was not assigned any other types of cases. He answered: "I felt that[ ] what he was capable of doing was what I

assigned to him." Tr. p. 57. When asked whether respondent was competent to handle jury trials, Judge Yeaman answered: "I don't think he was capable. I guess competence is as good a word." Tr. p. 58.

**4.** When asked whether respondent is competent to perform the duties of an associate circuit judge, Judge Yeaman responded: "In this day and age, he's not because I feel that there shouldn't be any difference between an associate circuit judge and a circuit judge. In other words, that judge should be able to handle everything." Tr. p. 67.

his duties, citing his industriousness, diligence, and integrity.[5]

Judge Ward Stuckey has been the Circuit Judge in Platte County since Judge Yeaman's retirement in February 1992, and had worked with respondent as Associate Circuit Judge for eleven years before that date. Associate Circuit Judge Owens Lee Hull has been on the bench with respondent for fourteen years. Both stated their opinion, based on their personal knowledge of respondent and on the nature of the charges, that respondent is not competent and has willfully neglected his duties.[6] Associate Circuit Judge Daniel Czamanske was newly elected at the time of the hearing and did not wish to state an opinion. However, he opined that, if true, the conduct charged in this case shows respondent is probably not competent.[7]

Finally, Retired Probate Judge George C. Berry expressed his opinion, formulated after a review of the probate files listed in the second amended notice and of the responses to the charges, that respondent is not competent to handle the duties of his office and has neglected those duties.[8]

In addition, the commission presented the testimony of ten lawyers who gave their opinion that respondent is not competent, based on their personal knowledge of respondent and the nature of the charges against him. Six of these witnesses stated that they felt respondent had willfully neglected his duties. Three other witnesses, however, felt that he had not. In particular, two attorneys thought that the nature of his incapacity is such that his neglect of duty could not be considered willful.

In rebuttal, respondent presented the testimony of eight attorneys who stated their opinion, based on their personal knowledge of respondent and the nature of the charges against him, that he is competent to handle the duties of his position and has not neglected them. The commission did not find their opinions persuasive. Although we do not dismiss the cumulative weight of these assessments, we also are not persuaded that they offset the weight of the testimony of the earlier witnesses. They do not negate or explain the troubling experience of the other witnesses, nor do they establish that such experience was the exception rather than the rule.

■ Incompetency is demonstrated by a pattern of inappropriate conduct over a period of time. *See In re Conduct of Jordan*, 290 Or. 669, 624 P.2d 1074, 1076 (banc 1981). It need not be shown that the judge's performance is substandard all of the time, or even most of the time. The fact that Judge Baber discharged his duties competently in his interactions with these particular witnesses does not preclude a finding that he cannot do so consistently, as evidenced by the testimony of other witnesses.

■ It is apparent from this recital that a considerable number of judges and attorneys who have worked with respondent feel that he cannot perform the duties of his office. Several witnesses, notably Judge Yeaman, indicated that respondent is able to handle the limited duties he has been assigned by local court rule. Nonetheless, the conclusion is inescapable that despite his diligent efforts, Judge Baber is

---

5. Tr. p. 68. When asked if respondent has willfully neglected his duties, Judge Yeaman answered: "I don't think he's, at any time, willfully. What he's done, he's felt in his heart was the right thing to do. It's like signing the order [in a specific case] without a hearing, he just didn't think." *Id.*

6. Tr. pp. 95, 175. These witnesses also described experiences with respondent that support their assessment of his lack of competency. Judge Stuckey testified as follows: "My experience has been that [respondent'] knowledge of the law is not great.... [M]y experience is somewhat limited, but some of the cases that

have been assigned to me after they were assigned to him, sometimes I had difficulty following his reasoning." Tr. p. 92.

Judge Hull was asked whether respondent consistently follows the law in traffic, small claims, and probate cases. He stated his opinion that respondent "does not consistently do that." Tr. p. 172. To a similar question, Judge Stuckey responded: "He's consistent in that sometimes he doesn't—many times he doesn't follow the law as I have heard it." Tr. p. 94.

7. Tr. p. 194.

8. Tr. pp. 233–4.

no longer capable of discharging all the responsibilities of his position. This assessment is supported by the charges contained in the second amended notice and admitted by respondent. Moreover, the number and extent of the charges, as well as their recurrence over a period of years, prevent us from concluding that we are dealing with isolated incidents that are unlikely to be repeated. Whether or not he could continue to function as a judge in some limited fashion, we find it has been proven by a preponderance of the evidence that Judge Baber is not capable of performing all the duties required by law to be performed by an associate circuit judge. *Section 478.-220*, RSMo Supp.1992. Accordingly, we hold that Judge Baber has been shown to be incompetent under article V, section 24.3 of the constitution.

 We arrive at a different determination on the issue of willful neglect. The expert testimony is inconclusive: Of those witnesses expressing an opinion on this issue, twelve felt that respondent had not willfully neglected his responsibilities, whereas nine others believed that he had. Moreover, a finding of willful neglect is inconsistent with the repeated testimonials in the record as to Judge Baber's honesty and good intentions.

We have carefully examined the record, and especially Judge Baber's testimony, for indications of intentional breach or abandonment of his official duties. Rather than neglect, we found abundant evidence of a heavy work load, hard work, and long hours. It also appears that respondent's habitual noncompliance with statutorily mandated procedures resulted from a lack of understanding of the law, or a misapprehension as to its significance. Therefore, we find that Judge Baber did not willfully neglect the duties of his judicial office.

Our holding does not imply that a judge must fear removal after every misstep. It would be unreasonable and unfair to expect every judge in our courts to be without occasional error or misjudgment, perfection not being typical of the human condition. *See In re Jordan*, 290 Or. 303, 622 P.2d 297, 316 (1981). We do not reach our conclusion in this case based on any one incident or charge, but rather on a recurrent pattern of mistaken rulings over a period of years. *Accord, Conduct of Jordan*, 624 P.2d at 1076.

A competency determination must remain focused on the judge's ability to consistently follow and apply the law over time. This is not a matter of incidental or isolated mistakes. Neither is it an issue of popularity. It is practically certain that every judge will err sometimes. It is also certain that many litigants and lawyers will be disappointed by a judge's decisions, even when he or she is not in error. Neither occasional error, nor unpopularity, is a ground for discipline.

Instead, when it is shown that one of our judges has grown unable to effectively discharge the duties of his or her office, and that there is no reasonable hope that the judge may regain that ability, we are compelled to act to preserve the public's confidence in our courts. As noted by Judge Welliver, "It is in the trial courtroom that the public has its direct contact with the judicial system and that the public formulates its opinion as to the fairness and the integrity of the system." *Buford*, 577 S.W.2d at 858 (Welliver, J., concurring in part and dissenting in part); *see also Field*, 576 P.2d at 355. In this case, the integrity of the system requires Judge Baber's removal from office.

## IV.

We wish to emphasize that respondent has *not* been shown to be guilty of misconduct, corruption, or oppression in office. Many of the witnesses attested to Judge Baber's courtesy, diligence, sense of fairness, and genuine desire to help the people who come before his court. Their testimony indicates that he is held in high regard as a person, if not always as a jurist. Nor has it been proven by a preponderance of the evidence that Judge Baber willfully neglected his duties. In fact, the weight of the evidence establishes his desire to serve well.

The record simply demonstrates that respondent is no longer capable of carrying

out all of the duties of an associate circuit judge, and the nature and pervasiveness of the charges against him make it unlikely that he will be able to improve his performance after a period of suspension. Therefore, we concur in the commission's recommendation and hereby remove respondent from office for incompetency. *Mo. Const.*, art. V, § 24.3.

## V.

In consideration of the foregoing, it becomes appropriate to determine whether the retirement disqualification statutes are triggered by our decision. These statutes provide as follows:

**476.480. Judges convicted, impeached or removed from office ineligible.**—Sections 476.450 to 476.510 [election to become special commissioner] shall not apply to any person who has been convicted of a felony in any court or who has been impeached or removed from office for misconduct.

**476.560. Disqualification by improper behavior.**—Except as provided in section 476.540, the benefits under sections 476.515 to 476.570 [retirement benefits] shall not apply to any judge who has been convicted of a felony in any court or who has been removed from office by impeachment or for misconduct or disbarred from the practice of law.

The only potential ground for disqualification in this case is misconduct. This term means a transgression, dereliction, unlawful or wrongful behavior, or impropriety that is willful in character. *Black's Law Dictionary* 889 (6th ed. 1990). This Court has previously used "misconduct" as a convenient collective term for several constitutional standards for removal that connote wrongdoing, including "oppression in office" and "willful neglect of duty." *Voorhees*, 739 S.W.2d at 180.

Incompetency, on the other hand, denotes an inherent incapacity that need not be coupled with willful wrongdoing. *Martin*, 61 So. at 494. When unaccompanied by wrongful behavior or malicious intent, incompetency does not constitute misconduct. Accordingly, we hold that Judge

Baber's removal from judicial office on the basis of incompetency alone does not trigger the disqualification statutes, *§§ 476.-480* and *476.560*, RSMo 1986.

All concur.